STATE OF CONNECTICUT *v.* MICHAEL J. BURNS
(10708)

PETERS, PARSKEY, SHEA, GRILLO and BIELUCH, Js.

470

Argued June 14—decision released September 4, 1984

*John R. Williams,* with whom, on the brief, was *Elizabeth M. Inkster,* for the appellant (defendant).

*Guy W. Wolf III,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Jill Niederhauser,* legal intern, for the appellee (state).

GRILLO, J. The defendant was charged with the murder of Paul Anderson following the return by the grand jury of a true bill of indictment on March 12, 1980. A prior grand jury, on March 5, 1980, after hearing the testimony of two witnesses, including that of Dennis DeLoughery, was discharged because one of the jurors disqualified himself and no alternate jurors were in attendance.

On April 14, 1980, the defendant moved that he be provided with a transcript of the testimony of Dennis DeLoughery taken at the first grand jury proceeding, as well as a complete transcript of the proceedings before the indicting grand jury. The court, *Ment, J.,* denied the motion as to the first grand jury proceed-

ing.[1] The defendant was furnished a transcript of the testimony before the indicting grand jury.

On January 26, 1981, at the commencement of the trial, the defendant renewed his motion for discovery of the March 5, 1980 transcript. He argued that "we [defense counsel] are making the representation here that there is information in that transcript which could be used by the defense at trial, either to impeach the testimony of a witness or to otherwise attack his credibility in showing inconsistency in his statements." This motion was denied.

At the trial, following the direct examination of the prosecution witness DeLoughery, the defendant renewed his motion for the March 5 transcript, citing § 752 of the Practice Book.[2] The court again denied the motion, noting that "[t]his [the transcript of the March 5 hearing] is not something that is in the possession of the State, something that the State was able to get from some witness who made a statement which is in the State's Attorney's office."

On cross-examination, counsel for the defendant questioned DeLoughery concerning the March 5 hearing. When asked whether he had told the truth at that hearing, the witness replied that he had. No further attempt was made by counsel to examine the witness concerning any statements he made before the March 5 grand jury.

---

[1] The transcript of the hearing on the motion indicates that the court noted at the close of the hearing that it would make a decision "before the morning is over." Neither the record nor the transcript recites the ruling. Both parties agree, however, that the motion was denied as to the testimony of Dennis DeLoughery at the aborted grand jury proceeding.

[2] "[Practice Book] Sec. 752——PRODUCTION FOLLOWING TESTIMONY

"After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

On appeal following his conviction of murder, the defendant assigns as error: (1) the denial of his motions seeking access to the earlier testimony of the prosecution witness DeLoughery, (2) the exclusion of evidence demonstrating that identification witnesses for the prosecution had been coached, and (3) the failure to exclude the alibi rebuttal testimony of a state's witness not disclosed to the defendant. We find no error.

In support of his first claimed error, the defendant argues that the trial court failed to comply with General Statutes § 54-45a[3] which he claims affords a clear legal right to a transcript of testimony at the March 5 hearing. We disagree.

The meaning of the words used by the legislature in § 54-45a is clear: "Access to the transcript shall be available only to the prosecutorial official or any person accused of a crime *as a result of the grand jury investigation . . . .*" (Emphasis added.) The terms of § 54-45a do not provide for access to the transcript of an aborted grand jury hearing. Since the meaning of this statute is plain and its language unambiguous, we refuse to adopt a construction not clearly stated by the legislature in the statute. See *Connecticut State Board of Labor Relations* v. *Board of Education,* 177 Conn. 68, 73, 411 A.2d 28 (1979).

Prior to the passage of § 54-45a, moreover, the law was clear that a defendant indicted by a grand jury had

---

[3] "[General Statutes] Sec. 54-45a. RECORD OF GRAND JURY PROCEEDINGS. TRANSCRIPTS. (a) In any grand jury proceeding ordered pursuant to the provisions of section 54-45, the official stenographer of the superior court or his assistant shall make a record of the proceedings excluding the deliberations, which shall be confidential and filed with the court. Access to the transcript shall be available only to the prosecutorial official or any person accused of crime as a result of the grand jury investigation or the accused person's attorney. The prosecutorial official or the person accused of a crime as a result of such grand jury investigation or the accused person's attorney may obtain a copy of the transcript by paying for it. . . ."

no absolute right to inspect the testimony taken before it. The matter was wholly within the discretion of the trial court, to be exercised only for strong reasons. See *State* v. *Hayes,* 127 Conn. 543, 580, 18 A.2d 895 (1941). The passage of § 54-45a, while opening the door of the grand jury hearing in a limited way for designated purposes, did not deprive the court of its general supervisory power over the release of grand jury testimony. In the absence of a controlling statute, whether to divulge grand jury evidence is still a matter falling within the exercise of the court's discretion. See *State* v. *Canady,* 187 Conn. 281, 285, 445 A.2d 895 (1982).[4]

At the pretrial hearings, the defendant's counsel had the benefit of the defendant's knowledge concerning DeLoughery's testimony at the March 5 hearing, since the defendant was present at those proceedings. No argument, however, was made nor evidence presented indicating a prior inconsistent statement. Moreover, at trial, counsel for the defendant cross-examined and recross-examined DeLoughery at length, affording the defendant a golden opportunity to present evidence of inconsistency in the testimony of the witness. Yet, other than an innocuous inquiry as to whether the witness had told the truth at the March 5 hearing, counsel for the defendant did not seek to lay a foundation for the introduction of an inconsistent statement by DeLoughery. See *State* v. *Saia,* 172 Conn. 37, 46, 372 A.2d 144 (1976). The nature of the claimed inconsistency never having been proffered to the court, there is no support in the record for the defendant's contention.

---

[4] The rule of *Dennis* v. *United States,* 384 U.S. 855, 872–73, 86 S. Ct. 1840, 16 L. Ed. 2d 973 (1966), is, as the dissent acknowledges, a rule of federal criminal procedure that has not, to date, been applied as a constitutional rule governing state criminal proceedings. We do not believe that the constitutional right of cross-examination invariably implicates a right to obtain grand jury testimony.

Little need be said relative to the defendant's claim that the refusal of the court to release the transcript was a denial of due process in violation of Practice Book § 752. The court's observation that there existed nothing in the possession of the state to which the defendant could have access decimates this argument. We recognize the *Brady* rule which imposes a constitutional duty upon a prosecutor to disclose exculpatory evidence which is known to the prosecution but unknown to the defense. See *Brady* v. *Maryland,* 373 U.S. 83, 87–88, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Here, however, there is no showing nor could there be a showing that the state had the transcript or had access to it. Furthermore, by making this argument in *Brady* terms, the defendant limited his request to the production of materials in the possession of the state, and should not now be permitted to make a different claim about the independent duty of the court to order disclosure on other grounds. Finally, it was the defendant, who had been present at the aborted hearing, who had the better opportunity to know the evidence that was revealed at that hearing. See *Henson* v. *United States,* 399 A.2d 16 (D.C. App.), cert. denied, 444 U.S. 848, 100 S. Ct. 96, 62 L. Ed. 2d 62 (1979). Accordingly, we find no abuse of the trial court's discretion to release the transcript of the March 5 hearing.

Equally without merit is the defendant's second assignment of error based on the court's exclusion of evidence which the defendant claims would have demonstrated that identification witnesses who testified for the prosecution were coached prior to giving testimony. We note that the defendant's brief fails to observe the procedure required by Practice Book § 3060F (c) (3).[5]

---

[5] Practice Book § 3060F (c) (3) provides:

"(c) The argument, divided under appropriate headings into as many parts as there are points to be presented, with appropriate references to the statement of facts or to the page or pages of the record or transcript. . . .

"(3) When error is claimed in any other ruling in a court or jury case,

While this omission could be fatal to a consideration of the error alleged; *State* v. *Tinsley,* 181 Conn. 388, 400–401, 435 A.2d 1002 (1980); we reluctantly excuse this noncompliance. See *State* v. *McDowell,* 179 Conn. 121, 127 n.5, 425 A.2d 935 (1979).

At trial, Dennis DeLoughery, Steven Tarquino, Mark Cunha, and Thomas DeLoughery all positively identified the defendant as the one who was responsible for stabbing Anderson in the left side of the head on January 25, 1980. After the prosecution rested, the defendant, in the absence of the jury, made an extensive offer of proof tending to impeach the identification testimony of the prosecution witnesses. Andrew Calandrelli was called as a witness by the defense. A friend of the defendant's family, he had been present in the courtroom when the second grand jury convened. Seated behind him at the proceedings were various prosecution witnesses including DeLoughery, Cunha, Steven Tarquino, and Gary Tarquino who was not a witness in this case. Calandrelli testified, still in the absence of the jury, that during the proceedings he saw Gary Tarquino point out the defendant and identify him to the others. After this offer of proof, the judge indicated that he would allow the testimony since identification

the brief shall include, where appropriate: the pertinent motion or pleading, if it does not appear in the printed record; the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; the ruling; and any exception. When the basis of the ruling cannot be understood without a knowledge of the evidence or proceeding which preceded or followed the ruling, a brief narrative or verbatim statement of the evidence or proceeding should be made. A verbatim excerpt from the transcript should not be used if a narrative statement will suffice. When the same ruling is repeated, the brief should contain only a single ruling unless the other rulings are further illustrative of the rule which determined the action of the trial court or establish the materiality or harmfulness of the error claimed. The statement of rulings in the brief shall include appropriate references to the page or pages of the transcript."

of the accused was an issue in the case. He further indicated that he would disallow the use of hearsay testimony.

Upon the jury's return to the courtroom, the witness Calandrelli was permitted to testify, the only limitation being to the words of Gary Tarquino. When asked, "[w]hat did Gary Tarquino say?" an objection by the state was sustained by the court. Defense counsel argued that the statement was "admissible hearsay" and insisted on having "on the record what Gary Tarquino said so I can have the issue for appeal." The jury was excused; the witness stated that Tarquino said, "[t]here he is. There is the (expletive deleted)," and that Tarquino was pointing to the defendant. Defense counsel again stated that it was "admissible hearsay" and indicated that the statement showed that the prosecution witnesses had to have the defendant pointed out to them. The court again sustained the state's objection and the defendant took an exception.

We first note that the derogatory words allegedly spoken by Tarquino could be interpreted as an expression of Tarquino's animus toward the defendant. Even if we assume the response is construed as the defendant suggests, however, defense counsel had the duty to state to the court the proper grounds for the admission of this evidence; Practice Book §§ 288, 3060F (c) (3); *Acampora* v. *Ledewitz,* 159 Conn. 377, 381, 269 A.2d 288 (1970); rather than to assert only that the evidence was "admissible hearsay." Merely informing the court of the purpose of the offer does not inform the trier of any well established exception to the hearsay rule. See *General Motors Acceptance Corporation* v. *Capitol Garage, Inc.,* 154 Conn. 593, 599, 227 A.2d 548 (1967).

Furthermore, a review of the defendant's brief illustrates that the defense wished to direct its attack pri-

marily on the testimony of Dennis DeLoughery, a key prosecution witness. It was obviously the intention of the defendant to discredit DeLoughery's identification of Michael Burns at trial that prompted the inquiry as to what was said by Gary Tarquino at the grand jury proceedings. Defense counsel was attempting to show that DeLoughery, at the time of the grand jury indictment hearing, had to have Michael Burns identified by Tarquino. The ruling, even if erroneous, was harmless since the jury heard testimony at trial indicating that Gary Tarquino had been asked by DeLoughery what the defendant looked like, evidence which the jury apparently chose to disbelieve.

The final claim of the defendant is that the court erred in permitting the state to rebut the defendant's alibi defense by presenting a witness known to the state whose identity had not been disclosed to the defendant. At trial, the state attempted to prove that the defendant caused the death of one Paul Anderson on the evening of January 25, 1980, outside the Cafe Francais in New Haven. Various witnesses for the prosecution positively identified the defendant as the one who was responsible for the stabbing of the victim on the left side of the head. After the close of the state's case, the defense presented testimony from Donna Picagli, a friend of the defendant. She testified that the defendant had been with her at her home on the night of Friday, January 25, 1980. She testified that at 6:30 or 7 p.m. that evening, she accompanied the defendant to Cheshire to visit the defendant's brother. They returned home at about 9 p.m. The witness further testified that the defendant remained at the Picagli home through the following Saturday afternoon.

The state then called Roberta Miller to the stand. She testified that she knew Donna Picagli and had heard that Picagli was going to testify as an alibi witness for the defendant. Miller testified that she had called

Picagli before the trial commenced and asked whether "he [the defendant] was really with you." Picagli had replied that he had not been with her, but that she wanted to testify for the defendant because "he had asked her to." The defendant had also told Picagli that "if anybody called, to say that he was with her all night long."

Prior to Miller's testifying, defense counsel was heard in the absence of the jury. He cited § 764 of the Practice Book and stated that the identity of Miller had not been disclosed to the defendant prior to trial and that "unless the state has duly notified the defense that this person may be called as a witness, the judge may exclude her testimony." The prosecution claimed it did not contend that Miller had any knowledge of the whereabouts of the defendant on the night in question, but rather that her testimony would impeach the testimony of Picagli. The court overruled the defense objection, the defendant excepted, and Miller was permitted to testify.

Practice Book § 762[6] et seq. provide for the demand, notice and disclosure requirements relative to an alibi

---

[6] "Sec. 762. ——DEFENSE OF ALIBI

"Sec. 763. —— ——NOTICE BY DEFENDANT

"Upon written demand filed by the prosecuting authority stating the time, date, and place at which the alleged offense was committed, the defendant shall file within ten days, or at such other time as the judicial authority may direct, a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi.

"Sec. 764. —— ——DISCLOSURE OF INFORMATION AND WITNESSES

"If the written demand and notice have been filed pursuant to Sec. 763, the prosecuting authority, within ten days after filing of the notice, but in no event less than ten days before the trial unless the judicial authority otherwise directs, shall file a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied upon to rebut testimony of any of the defendant's alibi witnesses."

defense. The state demanded notice of a possible alibi defense witness on February 13, 1980. Compliance was ordered by the court on May 15, 1980. It was not until January 14, 1981, on the eve of trial, that defense counsel filed a notice of alibi. Since the defendant failed to meet the prescribed requirements of § 763, the state's duty imposed by § 764 was never triggered. Accordingly, the trial court's failure to exclude Miller's testimony was not erroneous.

There is no error.

In this opinion PETERS, PARSKEY and BIELUCH, Js., concurred.

SHEA, J., concurring and dissenting. Although I agree with the remainder of the majority opinion, I disagree with the portion affirming the trial court's refusal to disclose the testimony of Dennis DeLoughery at the first grand jury proceeding as requested by the defendant. In *Dennis* v. *United States,* 384 U.S. 855, 872–73, 86 S. Ct. 1840, 16 L. Ed. 2d 973 (1966), it was held that the grand jury testimony of witnesses for the prosecution was discoverable without any claim or showing that specific testimony of the witnesses was inconsistent. Indeed, such a showing is normally impossible because of the unavailability of grand jury testimony to counsel, except for those few defendants who attended the grand jury proceeding and are sufficiently astute to recall some discrepancy after a witness has testified at trial. "It seemed to be a fair reading of *Dennis* that [a] defendant should always have access to the grand jury testimony of witnesses who testify against him at the trial." Wright, Federal Practice and Procedure (Criminal) § 108. Although *Dennis* purported to be applicable only to federal criminal proceedings, the effect of *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974), in giving constitutional import to the right of cross-examination makes any

unjustifiable restriction upon that right a matter of constitutional dimension. The collateral constitutional development of the right to discovery in criminal cases similarly raises a constitutional issue when any reasonable request for disclosure of information significant for the defense is denied. *United States* v. *Agurs,* 427 U.S. 97, 107–108, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976).

General Statutes § 54-45a was adopted as a result of the decision of the Federal District Court in *Chesney* v. *Robinson,* 403 F. Sup. 306 (D. Conn. 1975), aff'd without opinion, 538 F.2d 308 (2d Cir.), cert. denied, 429 U.S. 867, 97 S. Ct. 177, 50 L. Ed. 2d 147 (1976), which overturned on constitutional grounds our decision in *State* v. *Chesney,* 166 Conn. 630, 636–37, 353 A.2d 783, cert. denied, 419 U.S. 1004, 95 S. Ct. 324, 42 L. Ed. 2d 280 (1974), where we had affirmed the trial court's preclusion of any inquiry on cross-examination concerning inconsistent statements of a witness made at a grand jury proceeding. Although the restriction upon cross-examination was more clear-cut in *Chesney* than in the present case, the denial of access without some reasonable justification to an important source for ascertaining the truthfulness of the testimony of a key witness, such as DeLoughery, also may rise to the level of an infringement upon the constitutional right of confrontation. No reason but the traditional secrecy of grand jury proceedings has been suggested to support this denial of access to evidence of possibly great import. The preservation of the secrecy veil with respect to the testimony of a witness whose testimony at a subsequent grand jury proceeding has been made available and who also testifies at trial strikes me as a flagrant illustration of blind adherence to the past.

Despite the attempt of the legislature in § 54-45a to allow a defendant to lift the traditional veil by providing that access to the transcript of the grand jury pro-

ceeding shall be available to "any person accused of crime as a result of the grand jury investigation," the majority opinion construes § 54-45a so narrowly as not to apply to the aborted first grand jury proceeding. It is difficult to perceive what public policy is served by such a construction. Where the grand jury fails to return a true bill but a defendant is, nevertheless, charged by the prosecutor in an information for a lesser crime involving the same facts as those presented to the grand jury, it is inconceivable that the legislature intended to deny access to the transcript because the charge did not "result" from the grand jury investigation. There is a causal relationship between the failure of a grand jury to indict and a subsequent information for the same offense in that the latter is normally a consequence of the former. In the same sense the second grand jury proceeding in this case and the indictment which *resulted* therefrom can be said to have followed from the aborted first grand jury proceeding. The legislative purpose in enacting § 54-45a was to overcome the problems raised by *Chesney* v. *Robinson,* supra, and it should be construed accordingly. Those problems are further complicated by the restrictive interpretation adopted by the majority opinion.

The defendant's right to discovery of significant information which may prove to be exculpatory was also violated by the denial of access to the grand jury testimony of DeLoughery at the first proceeding. If the state had possession of the transcript of that proceeding there is no question but that our counterpart to the Jencks Act, Practice Book § 752, would apply once DeLoughery had testified. The circumstance that under our procedure the state's attorney does not routinely receive such a transcript, as does a federal prosecutor, and that the court has sole authority over its release, does not rationally justify a distinction. If a prosecutor in these circumstances would be obliged to furnish a copy

of DeLoughery's testimony at the first proceeding if he had possession of it, how can the refusal of the court to do so be justified? A court would have no lesser duty to provide a defendant with possibly exculpatory information than a prosecutor. Since we are dealing here with a request for specific information by the defendant, "if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." *United States* v. *Agurs,* supra, 106. The court was under the same obligation as the prosecutor and should at least have examined the testimony to determine whether it contained anything of importance to the defense. Its failure to do so and thus make the testimony available for our review makes it impossible for us to determine whether exculpatory evidence may be found therein.

I would find error in the denial of access to the requested testimony of DeLoughery without a determination that it contained nothing useful to the defendant for his cross-examination of that witness. I would remand for further proceedings so that an appropriate determination can be made by the trial court after allowing access to the transcript by the defendant so that he can effectively argue his claims. In the event that admissible evidence not previously available is found in the transcript of DeLoughery's testimony a further determination should be made as to its significance in respect to the outcome of the trial. *State* v. *Anonymous (83–FG),* 190 Conn. 715, 735–36, 463 A.2d 533 (1983); *State* v. *Gonzales,* 186 Conn. 426, 432, 441 A.2d 852 (1982).

Accordingly, I dissent from the failure to order a remand for further proceedings with respect to disclosure of the requested grand jury transcript.