STATE OF CONNECTICUT *v.* WILLIE A. DOUGLAS
(3989)

STATE OF CONNECTICUT *v.* RICHARD BUSH, JR.
(4182)

HULL, DALY and BIELUCH, Js.

Argued December 10, 1986—decision released March 10, 1987

*Leopold P. De Fusco,* special public defender, for the appellant (defendant Willie A. Douglas).

*James M. Connolly,* for the appellant (defendant Richard Bush, Jr.).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Gary Nicholson,* assistant state's attorney, and *Donald A. Browne,* state's attorney, for the appellee (state).

HULL, J. These two cases, which were tried together and combined on appeal, raise the issue of the conflict between the right of confrontation under the federal[1] and state constitutions[2] and General Statutes § 54-142a,[3] concerning erasure of records after acquittal. The defendants, Bush, Douglas and Jose Morales, and two others, Herbert Johnson and Lonnie Nichols, were each charged with the crimes of attempted robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), and aiding in an assault in the first degree in violation of General Statutes § 53a-59 (a) (3). Bush, Douglas and Morales were tried in a joint trial. Prior to the Bush-Douglas-Morales trial, Nichols pleaded guilty to assault in the first degree and Johnson was tried and acquitted of all charges. All of the witnesses called by the state in the Johnson trial testified at the Bush-Douglas-Morales trial. Johnson did not testify at either trial. Bush, Douglas and Morales were all convicted as charged, after a trial to a jury.

---

[1] Article sixth of the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[2] Article first, § 8, of the Connecticut constitution provides in pertinent part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ."

[3] General Statutes § 54-142a (a) provides in pertinent part: "Whenever in any criminal case, on or after October 1, 1969, the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the time to file a writ

Douglas claims error in the court's failure to order the state to produce the transcripts of testimony of the state's witnesses in *State* v. *Johnson*, after those witnesses testified at his trial. Bush, in almost identical language, claims error in the court's refusal to grant his motion for inspection or copying of the trial transcript of *State* v. *Johnson*. Bush also claims two additional errors: (1) the court failed to sever his case from that of the codefendant Douglas; and (2) the court should have dismissed the information due to the failure of the warrant to establish probable cause pursuant to the federal and state constitutions. We conclude that the court erred in failing to make an in camera inspection of the transcript of the trial of *State* v. *Johnson*, in order to determine what if any of the prior testimony must be made available to Bush and Douglas to preserve their constitutional right of confrontation. We also consider Bush's two additional claims of error because they are apt to recur should the trial court, after examination of the transcript in *State* v. *Johnson*, find sufficient prejudice in the denial to Bush of those transcripts to merit a new trial.

The state's case may be summed up as follows: In the early evening of November 26, 1983, the victim, Arthur Navarette, drove his automobile to the G and G Market in Bridgeport. He had been drinking with a friend. He went into the store and bought some beer. When he left the store Nichols stole his wallet. Navarette returned and purchased cigarettes between 8:15 p.m. and 8:30 p.m. His back pocket was ripped. Johnson handed him his license, which was on the ground. After taking Navarette's wallet, Nichols ran into the Marina Apartments housing project. On Navarette's return, Bush suggested getting the person who took the wallet. Bush, Johnson, and Navarette went into the apartments. Bush knew that Nichols and others were going

of error or take an appeal, if an appeal is not taken, or upon final determination of the appeal sustaining a finding of not guilty or a dismissal, if an appeal is taken. . . ."

to do something to the victim. Nichols, Johnson, Bush and Douglas were with the victim in the hallway. Johnson held the man while Bush and Douglas checked his pockets. Nichols hit him twice, causing him to fall. Both Bush and Douglas hit the man once or twice. In the melee, everyone took turns hitting and kicking the man. Nichols stepped on the man's head three or four times.

Bush admitted going into the apartment with Navarette. He stated at the trial and in his written statement given to police before his arrest that he had gone with him to help him obtain his wallet from Nichols or to find it if Nichols had thrown it away. Bush was ahead of the others in the hallway. When he turned back, he saw Johnson holding Navarette as if he were robbing him, and he tried to convince Johnson that Navarette had no money. Nichols then ruthlessly beat Navarette despite Bush's attempt to make him stop. Bush admitted that he checked the victim's pockets. He claimed that Nichols was the only one beating the man.

Douglas admitted that he checked the victim's pockets with Bush. He attributed the beating to Nichols and Johnson and the stomping to Nichols. Morales' only involvement was driving away Navarette's automobile.

I

## CLAIMED ERROR IN THE TRIAL COURT'S DENIAL TO BOTH DEFENDANTS OF ACCESS TO THE TRANSCRIPT OF THE EARLIER TRIAL OF A PARTICIPANT WHO HAD BEEN ACQUITTED.

Prior to trial, the court, *Melville, J.,* denied the defendants' motions to inspect or copy the transcripts of the Johnson trial but ordered that a transcript of the testimony of the state's witnesses in *State* v. *Johnson* be prepared and sealed so that they would be available at a later time if the trial court ordered their

disclosure or release. During the trial, Bush filed a motion for an in camera inspection of the transcript, claiming that at least one witness had contradicted his testimony and that his right of confrontation would be lost. The court, *Ford, J.,* denied this motion. Following testimony by two witnesses whom Douglas considered critical, he requested transcripts of their testimony in *State* v. *Johnson.* These motions were denied.

Bush claims that without the Johnson transcript he could not determine what if any inconsistencies existed between statements made by various witnesses in the two different trials. He cites *Davis* v. *Alaska,* 415 U.S. 308, 319–20, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974), wherein the Supreme Court considered that a witness' right to anonymity as a juvenile offender yielded to the paramount right to cross-examine provided in the confrontation clause. He also relied by analogy on the cases of *State* v. *Esposito,* 192 Conn. 166, 471 A.2d 949 (1984), and *State* v. *Bruno,* 197 Conn. 326, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986), which considered the conflict between a defendant's right of confrontation and the right of confidentiality between patient and psychiatrist contained in General Statutes § 52-146e.[4]

---

[4] General Statutes § 52-146e provides in pertinent part: "(a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative.

"(b) Any consent given to waive the confidentiality shall specify to what person or agency the information is to be disclosed and to what use it will be put. Each patient shall be informed that his refusal to grant consent will not jeopardize his right to obtain present or future treatment except where disclosure of the communications and records is necessary for the treatment.

Douglas claims that his constitutional right of confrontation was violated. He relies procedurally, however, on General Statutes § 54-86b (a)[5] and Practice Book § 752,[6] directing the prosecution, after a witness has testified, to produce any statements of the witness in the possession of the prosecution relating to the subject matter as to which the witness has testified. He relies by analogy on the case of *Chesney* v. *Robinson*, 403 F. Sup. 306 (D. Conn. 1975), aff'd, 538 F.2d 308 (2d Cir.), cert. denied, 429 U.S. 867, 97 S. Ct. 177, 50 L. Ed. 2d 147 (1976), which involved the conflict between the confrontation clause and grand jury secrecy in Connecticut. We conclude, however, that the proper foundation on which to resolve the tension between the confrontation clause and the erasure statutes lies in the defendants' federal and state constitutional rights to confrontation. Although we base this decision primarily on federal constitutional law, the right of confrontation in the constitution of Connecticut is substantially similar. See *State* v. *Veal*, 201 Conn. 368, 375 n.7, 517 A.2d 615 (1986).

---

"(c) The patient or his authorized representative may withdraw any consent given under the provisions of this section at any time in a writing addressed to the person or office in which the original consent was filed. Withdrawal of consent shall not affect communications or records disclosed prior to notice of the withdrawal."

[5] General Statutes § 54-86b(a) provides that: "In any criminal prosecution, after a witness called by the prosecution has testified on direct examination, the court shall on motion of the defendant order the prosecution to produce any statement oral or written of the witness in the possession of the prosecution which relates to the subject matter as to which the witness has testified, and the court shall order said statement to be delivered directly to the defendant for his examination and use."

[6] Practice Book § 752 provides that: "After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witnesses has testified."

The due process clause of the fourteenth amendment to the United States constitution confers the right of confrontation upon defendants in state prosecutions. *Pointer* v. *Texas,* 380 U.S. 400, 406, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). The principal purpose of this right is to provide the opportunity for cross-examination. *Davis* v. *Alaska,* supra 315; *State* v. *George,* 194 Conn. 361, 365, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985). Confronting a witness with his own statement contradicting his own testimony is a valuable and standard method of attacking his credibility. *State* v. *Carter,* 189 Conn. 631, 640, 458 A.2d 379 (1983).

We look by analogy to four emerging lines of authority in Connecticut. All four areas overlap to some extent although each arises from a different statutory and historical matrix. We seek to distill the essence of these developing trends to guide the way in this case.

## A

### THE PSYCHIATRIST-PATIENT PRIVILEGE CASES

We cannot improve on the summary of the law on this subject by Justice Shea in *State* v. *Pierson,* 201 Conn. 211, 514 A.2d 724 (1986). "This court has faced similar problems of attempting to reconcile the privilege with the right of confrontation in respect to disclosure of records of psychiatric treatment of a witness in a criminal case. *State* v. *Bruno,* [supra, 329–32]; *State* v. *Esposito,* [supra, 177–80]; *State* v. *Storlazzi,* 191 Conn. 453, 455–63, 464 A.2d 829 (1983). In *State* v. *Storlazzi,* supra, an in camera inspection of the records had been made by the trial court, apparently without objection, as in this case, and we affirmed, after our own examination of these records, the denial of the defendant's request for access to them, because they did not 'sufficiently disclose material especially probative of the victim's ability to know and correctly relate

the truth so as to justify breaching their confidentiality in disclosing them to the defendant.' Id., 460. In *State* v. *Esposito,* supra, where the trial court had refused to make an in camera examination of psychiatric records, we upheld the ruling upon the ground that, before the court should engage in that procedure, even with the consent of the witness, 'there must be a showing that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken.' Id., 179. In that case we found that there had been no 'threshold showing that at any pertinent time [the witness] had a mental problem which affected her testimonial capacity in any respect, let alone to a sufficient degree to warrant further inquiry.' Id., 180. . . .

"The procedure we established in *Esposito* and *Bruno* for permitting the trial court, with the consent of the witness, to review in camera the records of psychiatric treatment that are before the court must be modified if a defendant is to have the same protection of his constitutional right of confrontation in respect to unrecorded communications made confidential by § 52-146e. Where there is any reasonable basis in the evidence for believing that psychiatric personnel may have information relating to the mental condition of a witness that might affect his testimony, the court must conduct a voir dire of the person who may possess such information in order to discover whether it would be admissible. . . . If, after conducting such a voir dire, the court decides that some of the evidence elicited is admissible at trial, the defendant shall be permitted to use it, but the remaining confidential communications shall be sealed. If no admissible impeaching evidence is discovered, the entire record of the proceeding shall be sealed for possible appeal review." Id., 225–28.

We cull from *Pierson* a pragmatic balancing of competing interests. *Pierson* sanctions the already established procedure for an in camera inspection of psychiatric records. It cogently notes that without an opportunity to ascertain whether the psychiatrist had information, other than that contained in the records previously reviewed by the court, of any mental aberration that might reflect on the complainant's credibility, it would ordinarily be impossible for a defendant to lay the necessary ground work demanded by *Esposito* to get such information. To alleviate this judicial game of blind man's buff, the court broke new ground and authorized on remand a voir dire of the witness. *Pierson* lights the way.

## B

### THE GRAND JURY SECRECY CASES

In *State* v. *Chesney,* 166 Conn. 630, 353 A.2d 783, cert. denied, 419 U.S. 1004, 95 S. Ct. 324, 42 L. Ed. 2d 280 (1974), the defendant had been convicted of second degree murder. A witness at the trial testified that the decedent said before he died that Chesney shot him. The defendant attempted to cross-examine this witness to show an inconsistency in his testimony before the grand jury. The trial court would not allow such cross-examination because of the secrecy and informal nature of grand jury proceedings. On appeal the defendant claimed that his right of confrontation had been violated. The Supreme Court noted that the proceedings of a grand jury are informal and untranscribed, and that they are conducted in secret. Under the circumstances, it concluded that the secrecy of the grand jury could not be invaded. It cited *State* v. *Coffee,* 56 Conn. 399, 410, 16 A. 151 (1888), and *State* v. *Fasset,* 16 Conn. 457, 467 (1844). The Supreme Court did not comment on the exception to the secrecy rule for prosecutions for perjury and contradicting witnesses, enumerated in *Fasset*

and *Coffee* and repeated in *State* v. *Hayes,* 127 Conn. 543, 580, 18 A.2d 895 (1941). It thus did not discuss the irony of a defendant having such a right without any possible means of enforcing it.

On habeas corpus the district court in *Chesney* v. *Robinson,* supra, noted that Chesney, as the defendant, attended the proceedings of the grand jury which indicted him, and the witness did not identify Chesney as his assailant. The court concluded in pertinent part: (1) the petitioner was deprived of his opportunity to present fully to the jury his theory that the chief prosecution witness had fabricated a significant portion of his testimony and, in particular the damaging accusation by the decedent; (2) the petitioner was denied the right to an adequate cross-examination. A writ of habeas corpus issued, discharging Chesney unless he was promptly retried.

In 1978, General Statutes § 54-45a was enacted in apparent response to *Chesney* v. *Robinson,* supra. It provided as amended in pertinent part: "(a) In any grand jury proceeding ordered pursuant to the provisions of section 54-45, the official stenographer of the superior court or his assistant shall make a record of the proceedings excluding the deliberations, which shall be confidential and filed with the court. Access to the transcript shall be available only to the prosecutorial official or any person accused of crime as a result of the grand jury investigation or the accused person's attorney. The prosecutorial official or the person accused of a crime as a result of such grand jury investigation or the accused person's attorney may obtain a copy of the transcript by paying for it. (b) The transcript of such proceedings may not be used as evidence in any proceeding against the accused except for the purpose of impeaching a witness, attacking the credibility of a witness or proving inconsistent statements

of a witness. The transcript may also be used as evidence in a prosecution for perjury committed by a witness while giving such testimony."[7]

In *State* v. *Canady,* 187 Conn. 281, 285, 445 A.2d 895 (1982), the Supreme Court took a restrictive view of the availability of such a transcript. Where the traditional secrecy of grand jury proceedings is well entrenched in the common law—"older than our Nation itself"; *Pittsburgh Plate Glass Co.* v. *United States,* 360 U. S. 395, 399, 79 S. Ct. 1237, 3 L. Ed. 2d 1323 (1959); any change in that law must be strictly construed.

In *State* v. *Burns,* 194 Conn. 469, 481 A.2d 1077 (1984), the Supreme Court held that the trial court did not err in denying the defendant's motion to obtain the transcript of the testimony of a witness in an earlier aborted grand jury hearing, since General Statutes § 54-45a did not so provide. It also held that the defendant's due process rights were not violated when his motion under Practice Book § 752 for production of statements in the state's possession was denied. The court noted that the defendant was present at the grand jury hearing and that no evidence was presented to the court indicating a prior inconsistent statement. It found that counsel for the defendant did not seek to lay a foundation for the introduction of an inconsistent statement. It further concluded that the court did not abuse its discretion in denying the defendant's motion under Practice Book § 752 since the transcript was not in possession of the state. Likewise, it found no violation of the disclosure duty of exculpatory material under *Brady* v. *Maryland,* 373 U.S. 83, 87–88, 83 S. Ct. 1194,

---

[7] Section 3 of Public Acts 1983, No. 83-210, effective May 26, 1983, repealed the grand jury provisions embodied in General Statutes § 54-45. In its stead, the public act prescribed procedures by which probable cause hearings would be conducted. See *State* v. *Sanabria,* 192 Conn. 671, 679–80, 474 A.2d 760 (1984).

10 L. Ed. 2d 215 (1963), since the defendant's *Brady* argument was limited to material in possession of the state.

Justice Shea concurred, but dissented from that portion of the opinion which affirmed the trial court's refusal to disclose the testimony of the witness at the first grand jury hearing. In language strikingly apposite to our quest, Justice Shea stated: "In *Dennis* v. *United States,* 384 U.S. 855, 872–73, 86 S. Ct. 1840, 16 L. Ed. 2d 973 (1966), it was held that the grand jury testimony of witnesses for the prosecution was discoverable without any claim or showing that specific testimony of the witnesses was inconsistent. Indeed, such a showing is normally impossible because of the unavailability of grand jury testimony to counsel, except for those few defendants who attended the grand jury proceeding and are sufficiently astute to recall some discrepancy after a witness has testified at trial.[8] . . . Although the restriction upon cross-examination was more clear-cut in *Chesney* than in the present case, the denial of access without some reasonable justification to an important source for ascertaining the truthfulness of the testimony of a key witness . . . also may rise to the level of an infringement upon the constitutional right of confrontation. No reason but the traditional secrecy of grand jury proceedings has been suggested to support this denial of access to evidence of possibly great import. The preservation of the secrecy veil with respect to the testimony of a witness whose testimony at a subsequent grand

---

[8] The majority stated in a footnote: "The rule of *Dennis* v. *United States,* 384 U.S. 855, 872–73, 86 S. Ct. 1840, 16 L. Ed. 2d 973 (1966), is, as the dissent acknowledges, a rule of federal criminal procedure that has not, to date, been applied as a constitutional rule governing state criminal proceedings. We do not believe that the constitutional right of cross-examination invariably implicates a right to obtain grand jury testimony." *State* v. *Burns,* 194 Conn. 469, 473, 481 A.2d 1077 (1984). The procedure we adopt hereafter obviates our consideration of the application of the rule of *Dennis* v. *United States,* to this case.

jury proceeding has been made available and who also testifies at trial strikes me as a flagrant illustration of blind adherence to the past." (Footnote added.) *State* v. *Burns,* supra, 479–80. (*Shea, J.,* concurring and dissenting).

## C

### THE ATTORNEY-CLIENT PRIVILEGE

Two cases require brief mention. In *State* v. *Cascone,* 195 Conn. 183, 487 A.2d 186 (1985), Chief Justice Peters discussed the factors to be considered in determining the applicability of the attorney-client privilege to communications of an accomplice who testifies at trial. In order to resolve the competing interests of confidentiality and access to evidence, the court applied a fact-specific balancing test. The court then concluded that the harm of excluding the evidence because of the privilege was outweighed by the benefit to the defendant in admitting it. Because the court disposed of the issue on the basis of the defendant's common law argument, it did not weigh the policy behind the attorney-client privilege against the criminal defendant's constitutional rights of confrontation and compulsory production of witnesses. Id., 190 n.6. In *State* v. *Silva,* 201 Conn. 244, 256, 513 A.2d 1202 (1986), the court found the *Cascone* balancing test not to be involved under the circumstances of the case.

## D

### THE RAPE SHIELD STATUTE

One other area of statutory secrecy will be mentioned. The case of *In re Robert H.,* 199 Conn. 693, 709–10, 509 A.2d 475 (1986), discussed the privilege created by General Statutes § 52-146k concerning communications of a sexual assault victim to a rape crisis counselor. The Supreme Court did not require a determination that the confidential communications of the

victim were inconsistent with his testimony at trial before an in camera review could be conducted by the court, with the victim's consent, of the record of those prior statements. See also *State* v. *Jones,* 8 Conn. App. 44, 510 A.2d 467 (1986).

Our analysis of these four areas of emerging case law in Connecticut reveals the following. The restrictive approach taken in the grand jury cases is a reflection of the antiquity and sacrosanct nature of grand jury proceedings through more than three centuries of Connecticut history. The more modern view is strongly reflected in the abolition of grand jury proceedings for class A felonies and the legislative response thereto. The psychiatrist-patient, attorney-client and rape shield lines of authority reveal the gradual creation of a pragmatic, fact-specific balancing test in each of these areas. All of the cases together reveal a recognition of the futility of according rights to persons seeking access to otherwise secret testimony without affording the court an opportunity to ascertain the validity of such a claim. Such a right without a remedy is at odds with emerging standards of due process, both state and federal.

We conclude that the rights of confrontation of the defendants under article six of the United States constitution and article first of the Connecticut constitution were violated by the court's refusal to conduct an in camera examination to determine if the transcript in the trial of *State* v. *Johnson* contained material inconsistent statements of witnesses who were also witnesses in these cases sufficient to have affected the outcome of the trials of either or both of these defendants. No preliminary showing of inconsistency is required to trigger this inspection. Such a requirement would vitiate the very right we vindicate in these cases. The secrecy of the erasure statute must yield to the laser-like thrust of the defendants' constitutional rights.

We leave to another day the question of whether either defendant's due process rights were violated by the court's failure to order production of a witness' statement in "possession of the state" under Practice Book § 752. We likewise do not reach the question of a possible *Brady* violation concerning exculpatory material "known to the state."

The case of *State* v. *Gonzales,* 186 Conn. 426, 435, 441 A.2d 852 (1982), concerned the trial court's failure to conduct an in camera inspection under Practice Book § 753 to determine what if any part of a prior statement of a witness ordered produced under Practice Book § 752 should be excised because it "does not relate to the subject matter of the testimony of the witness." The court set out the procedure on remand as follows: "Until the . . . statement is inspected by the court, the state's final argument must also fail. Whether the defendant was prejudiced by not having access to the whole . . . statement cannot be determined by speculation about what that statement contains. Nor may we speculate as to whether the jury would have convicted the defendant had the [witness'] testimony been stricken if the state had elected to refuse to produce the statement. This is not, on the present record, a case of harmless error.

"The trial court's error in failing to inspect the whole . . . statement does not, however, require us to set aside the judgment that has been rendered. We assume that the . . . statement is still in the hands of the prosecuting authority. On that assumption, the case is remanded to the judge who presided at the trial so that he can now conduct the in camera inspection required by § 753.

"After inspection of the . . . statement, the trial judge must resolve one or possibly two questions. He must first determine whether any undisclosed portion

of the . . . statement contains material which relates to the subject matter of [the] direct testimony. If some portion of the statement contains material which ought to have been disclosed, he must determine whether the error was harmful because the defense was prejudiced by failing to gain access to this undisclosed material. A new trial must be ordered if both of these questions are answered in the affirmative; otherwise the statement must be sealed and preserved as an exhibit to enable the defendant, if he wishes, to seek further judicial review." Id., 435–36; accord *State* v. *Anonymous (83-FG)*, 190 Conn. 715, 735, 463 A.2d 533 (1983). Our remand comports with the procedure set out in *Goldberg* v. *United States*, 425 U.S. 94, 111–12, 96 S. Ct. 1338, 47 L. Ed. 2d 603 (1976); *Campbell* v. *United States*, 365 U.S. 85, 92–93, 81 S. Ct. 421, 5 L. Ed. 2d 428 (1961); and *Palermo* v. *United States*, 360 U.S. 343, 351–53, 79 S. Ct. 1217, 3 L. Ed. 2d 1287 (1959). In each of these cases, since access to the statements of witnesses for the prosecuting authority is not a constitutional right; *State* v. *Gonzales*, supra, 436; *State* v. *Anonymous (83-FG)*, supra, 736; the defendant had the burden of establishing the probability of such harm; *State* v. *Cooper*, 182 Conn. 207, 212, 438 A.2d 418 (1980). In the cases here involved, since we find a violation of the defendants' constitutional rights, the state has the burden as to each defendant to prove the error harmless beyond a reasonable doubt. *State* v. *Cohane*, 193 Conn. 474, 485, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984).[9]

[9] The court in *Chesney* v. *Robinson*, 403 F. Sup. 306 (D. Conn. 1975), aff'd, 538 F.2d 308 (2d Cir.), cert. denied, 429 U.S. 867, 97 S. Ct. 177, 50 L. Ed. 2d 147 (1976), stated that the claimed denial of Chesney's right to an effective cross-examination is a claim which the Supreme Court has described as "constitutional error of the first magnitude" which "no amount of showing of want of prejudice would cure . . . ." *Chesney* v. *Robinson*, supra, 309, quoting *Smith* v. *Illinois*, 390 U.S. 129, 131, 88 S. Ct. 748, 19 L. Ed. 2d 956 (1968). Without directly distinguishing this standard, our Supreme Court has applied a harmless error standard in two cases; *State*

We conclude that the case must be remanded to the judge who presided at the trial so that the court can conduct the further proceedings which this opinion has outlined and which are more particularly detailed in *State* v. *Gonzales,* supra, 435–36. *State* v. *Anonymous (83–FG),* supra, 736. Although General Statutes § 51-183c ordinarily requires that, upon a retrial, a different judge shall preside, that statute is inapplicable here, where the purpose of the remand is not to correct error but to determine whether error has occurred.

## II

### ADDITIONAL CLAIMS OF ERROR BY THE DEFENDANT BUSH

#### A

##### CLAIMED ERROR IN THE DENIAL OF THE DEFENDANT BUSH'S MOTION TO SEVER HIS TRIAL FROM THAT OF DOUGLAS

Before trial, Bush moved for severance of his case from that of Douglas and Morales.[10] He claimed that the statements of Douglas and Bush were antagonis-

v. *Milum,* 197 Conn. 602, 607, 500 A.2d 555 (1985) (denial of right to cross-examine complainant regarding motive, bias, interest and prejudice arising out of a civil suit brought by the complainant after the same incident); *State* v. *Ortiz,* 198 Conn. 220, 225, 502 A.2d 400 (1985) (denial of cross-examination into witness' motive and interest). This is in accord with recent authority of the United States Supreme Court. In *Delaware* v. *Van Arsdall,* 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986), the court found a violation of the defendant's right of confrontation by prohibiting the defendant's inquiry into possible bias of a witness and determined that this unconstitutional denial was subject to harmless error analysis. For a comprehensive analysis of which type of case does not and which does deserve harmless error analysis see *Rose* v. *Clark,* 478 U.S. 570, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986).

We approve of the criteria for such a harmless error analysis set forth in *Delaware* v. *Van Arsdall,* supra, 684. "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully

tic to each other and that a joint trial would be unduly prejudicial to him. He also claimed that Douglas was a convicted felon and that such evidence would substantially prejudice Bush, who had no prior record. At oral argument on the motion, Bush raised the question of prejudice to him under the theory of *Bruton* v. *United States,* 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). The court denied the motion to sever, concluding that the statements of the defendants were harmonious and interlocking and did not require severance. The court did not specifically rule on the claim regarding Douglas' prior record.

The procedural background is as follows: Douglas' written statement, which was offered at trial, contained the following statement attributed by Douglas to Bush: "Well let me go see what these guys are going to do to him." On Bush's motion, the court redacted this declaration. Thereafter, Douglas' written statement was admitted into evidence as an admission by Douglas. Subsequently, the state's attorney, while cross-examining Douglas, asked him whether he heard Bush say anything while he was standing outside of the G and G Market after Navarette had entered the Marina apartments. Douglas answered: "He was going to go and see what he—he was going to do or something like that." Bush claims that since he never denied his presence at

realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecutions's case. Cf. *Harrington* [v. *California,* 395 U.S. 250, 254, 89 S. Ct. 1726, 23 L. Ed. 2d 284 (1969)]; *Schneble* v. *Florida,* 405 U.S. [427, 432, 92 S. Ct. 1056, 31 L. Ed. 2d 340 (1972)]."

[10] Bush does not claim error in the court's denial of his motion to sever concerning Morales.

the scene, this evidence was used by the state to show intent in that it shows that Bush knew what was going to happen in the apartment building. He claims that the admission of this single hearsay statement made it necessary for him to testify.[11]

" 'Joint trials of persons jointly indicted or informed against are the rule, and separate trials the exception resting in the discretion of the court.' " *State* v. *Haskins,* 188 Conn. 432, 449–50, 450 A.2d 828 (1982); *State* v. *Castelli,* 92 Conn. 58, 65, 101 A. 476 (1917). "A separate trial will be ordered where the defenses of the accused are antagonistic, or evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused." *State* v. *DeWitt,* 177 Conn. 637, 644, 419 A.2d 861 (1979). The criterion to be applied by the trial court is whether substantial injustice is likely to result unless a separate trial is accorded. *State* v. *Varricchio,* 176 Conn. 445, 447–48, 408 A.2d 239 (1979). The phrase "prejudicial to the rights of the parties" means something more than that a joint trial will probably be less advantageous to the accused than separate trials. *State* v. *McCarthy,* 130 Conn. 101, 103, 31 A.2d 921 (1943). The trial court enjoys great latitude in the application of the standard and it will be reversed on an issue of joinder only where it commits an abuse of discretion that results in manifest prejudice to one or more of the defendants. *State* v. *Vinal,* 198 Conn. 644, 649, 504 A.2d 1364 (1986). There is no constitutional or absolute right to a separate trial. *State* v. *McLucas,* 172 Conn. 542, 561, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977).

---

[11] He claims the admission of this declaration not as an error independently but as evidence of prejudice to him from the denial of his motion to sever the two trials.

An examination of the written statements of Bush and Douglas shows a remarkable similarity. Bush admits in his brief that the statements are "certainly harmonious in large measure."

The defendant's reliance on this one isolated hearsay statement falls far short of the necessary prejudice to mandate a severance of the trials of Douglas and Bush. The claim is vitiated by Douglas' previous testimony offered after having had his recollection refreshed that "[Bush] said he was going to see what these guys were doing or what Johnson was going to do or something like that."

The declaration in Douglas' statement ascribed to Bush is not inculpatory. It proves his presence at the scene, which was not denied. The statements and testimony of Douglas and Bush were in harmony, each describing the other and himself in the hallway looking throught the victim's pockets. Bush did not refute this declaration when he testified.

The defendant argues that the admission of the declaration caused a Bruton violation, thus creating prejudice. *Bruton* v. *United States,* supra, found a violation of the defendant's sixth amendment right of confrontation when the confession of a nontestifying codefendant, inculpatory against the defendant Bruton, was admitted in their joint trial. Since each defendant testified in these trials the *Bruton* rule is inapplicable. Further, as we find the declaration noninculpatory it does not fall within the reach of *Bruton* since "extrajudicial statements or confessions by one defendant which do not directly inculpate the codefendant are not within the prohibition of *Bruton* v. *United States,* supra, and are admissible. *Bruton* reaches only those statements which implicate the complaining codefendant as well as the declarant." *State* v. *Cosgrove,* 181 Conn. 562, 591, 436 A.2d 33 (1980).

Bush's claim of prejudice from the admission of Douglas' prior felony conviction is singularly without merit. Douglas did testify. His prior felony conviction was brought out only in his direct testimony that he was convicted of an unspecified felony in 1983. Other than claiming possible prejudice, Bush offered no further evidence of any such prejudice. The court, in its charge, limited the effect of this disclosure to the question of Douglas' credibility. The defendant cites no case for this claimed prejudice. If the defendant were correct, there would be relatively few joint trials in this country. In the total absence of manifest prejudice or substantial injustice to the defendant Bush; see *State* v. *Smith,* 201 Conn. 659, 672, 519 A.2d 26 (1986); the court did not abuse its necessarily broad discretion in denying Bush's motion for a separate trial from Douglas.[12]

B

CLAIMED ERROR IN THE COURT'S REFUSAL TO DISMISS THE INFORMATION DUE TO THE FAILURE OF THE WARRANT TO ESTABLISH PROBABLE CAUSE PURSUANT TO THE CONSTITUTIONS OF THE UNITED STATES AND CONNECTICUT

Bush moved to dismiss the information on the ground that the affidavit upon which the arrest warrant was predicated lacked probable cause because the reliability of the affiants' informant, Rodriguez, was not established in the affidavit in accordance with the federal and state constitutional criteria enunciated in *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985). The court denied this motion. Since Rodriguez was a witness and was an identified informer, his reliability did not have

---

[12] For a comprehensive analysis of the criteria applicable in considering a motion to sever trials, see *State* v. *Smith,* 201 Conn. 659, 668–71, 519 A.2d 26 (1986).

to be established. 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.3, pp. 499–500.

We conclude that the affidavit establishes probable cause to believe that Bush committed the crimes for which his arrest was sought. The defendant admits this in his brief. Even if this were not so the defendant could not prevail in this claim of error. In *State* v. *Fleming,* 198 Conn. 255, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986), the Supreme Court expressly overruled the holding of *State* v. *Licari,* 153 Conn. 127, 214 A.2d 900 (1965), which had ruled that an illegal arrest deprives a court of jurisdiction over a defendant. In order to prevail on a motion to dismiss, the defendant must show that the fairness of the subsequent prosecution was impaired by the allegedly illegal arrest. *State* v. *Graham,* 200 Conn. 9, 21, 509 A.2d 493 (1986). The record in this case is devoid of any such showing. No statement, identification, or seizure of evidence occurred as a result of the defendant's arrest under the warrant. The court did not err in denying the defendant's motion to dismiss on the ground of lack of probable cause.

There is error, the judgments are set aside and the case is remanded to the trial court for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.