STATE OF CONNECTICUT *v.* LARRY GATES
(11970)

HEALEY, DANNEHY, SANTANIELLO, CALLAHAN and HAMMER, Js.

Argued October 11, 1985—decision released January 21, 1986

*Maxwell Heiman,* with whom, on the brief, was *William J. Tracy, Jr.,* for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Robert Meyers,* former assistant state's attorney, for the appellee (state).

HAMMER, J. On October 14, 1982, the defendant, Larry Gates, entered pleas of nolo contendere to indictments charging him with the murder of Elizabeth Hart, in violation of General Statutes § 53a-54a, and felony

murder in connection with the death of her infant son, Thomas Hart, in violation of General Statutes § 53a-54c. The court, *Corrigan, J.,* ordered a presentence investigation and continued the case for sentencing. On January 25, 1983, three days prior to the sentencing hearing, the defendant filed a request for examination at the diagnostic unit of the Whiting Forensic Institute (Whiting) pursuant to General Statutes § 17-244.[1]

On January 28, 1983, the date set by the court for the imposition of sentence, Dr. Walter A. Borden, a psychiatrist who had examined the defendant after his arrest on June 25, 1980, and during his hospitalization at the Elmcrest Psychiatric Institute between July 1, 1980, and May 5, 1981, testified in support of the defendant's motion for a diagnostic evaluation at Whit-

---

[1] General Statutes § 17-244 provides: "(a) Except as provided in section 17-255 any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers, or of a sex offense involving (1) physical force or violence, (2) disparity of age between an adult and a minor or (3) a sexual act of a compulsive or repetitive nature, may if it appears to the court that such person is mentally ill and dangerous to himself or others, upon its own motion or upon request of any of the persons enumerated in subsection (b) of this section and a subsequent finding that such request is justified, order the commissioner to conduct an examination of the convicted defendant by qualified personnel of the institute. Upon completion of such examination the examiner shall report in writing to the court. Such report shall indicate whether the convicted defendant should be committed to the diagnostic unit of the institute for additional examination or should be sentenced in accordance with the conviction. Such examination shall be conducted and the report made to the court not later than fifteen days after the order for the examination. Such examination may be conducted at a correctional facility if the defendant is confined or it may be conducted on an outpatient basis at the institute or other appropriate location. If the report recommends additional examination at the diagnostic unit, the court may, after a hearing, order the convicted defendant committed to the diagnostic unit of the institute for a period not to exceed sixty days, except as provided in section 17-245 provided the hearing may be waived by the defendant. Such commitment shall not be effective until the director certifies to the court that space is available at the diagnostic unit. While confined in said

ing. He stated that although the defendant was legally sane and therefore criminally responsible for his actions, he was mentally ill. It was his opinion that the defendant would be dangerous to himself or others in a prison setting and that he should be committed to Whiting for custody, care and treatment.

Borden, in response to questioning by the court, stated that the defendant had no history of assaultive behavior or violence apart from his involvement in the killings of Elizabeth and Thomas Hart. Judge Corrigan also questioned Borden about a previous psychiatric report in which he referred to the defendant's history of drug and alcohol abuse and the fact that his consumption of drugs and alcohol on the day of the murders was a contributing factor.

---

diagnostic unit, the defendant shall be given a complete physical and psychiatric examination by the staff of the unit and may receive medication and treatment without his consent. The director shall have authority to procure all court records, institutional records and probation or other reports which provide information about the defendant.

"(b) The request for such examination may be made by the state's attorney or assistant state's attorney who prosecuted the defendant for an offense specified in this section, or by the defendant or his attorney in his behalf. If the court orders such examination, a copy of the examination order shall be served upon the defendant to be examined.

"(c) Upon completion of the physical and psychiatric examination of the defendant, but not later than sixty days after admission to the diagnostic unit, a written report of the results thereof shall be filed in triplicate with the clerk of the court before which he was convicted, and such clerk shall cause copies to be delivered to the state's attorney and to counsel for the defendant.

"(d) Such report shall include the following: (1) A description of the nature of the examination; (2) a diagnosis of the mental condition of the defendant; (3) an opinion as to whether the diagnosis and prognosis demonstrate clearly that the defendant is actually dangerous to himself or others and requires custody, care and treatment at the institute; and (4) a recommendation as to whether the defendant should be sentenced in accordance with the conviction, sentenced in accordance with the conviction and confined in the institute for custody, care and treatment, placed on probation by the court or placed on probation by the court with the requirement, as a condition to probation, that he receive outpatient psychiatric treatment."

The court denied the defendant's request for a diagnostic examination on the ground that the defendant had failed to establish any history of assaultive conduct or violent behavior prior to his arrest or during his subsequent confinement at the correctional centers at Hartford and Cheshire. Judge Corrigan also noted that because drug abuse would not be a problem in confinement, there was no factual basis for Borden's opinion as to dangerousness. The court then proceeded with the sentencing hearing over the defendant's objection. After hearing the arguments of counsel, the court imposed sentences of twenty-five years to life on the murder charge and fifteen years to life on the charge of felony murder, to run consecutively, for a total effective sentence of forty years to life.

The defendant first claims that under General Statutes § 17-244 a finding of mental illness and dangerousness is required only where the court acts sua sponte. He contends that where the motion for an examination is made by the defendant, it must be granted by the court upon a "finding that such request is justified . . . ."

The state argues that the claim that the statute imposes a different and less stringent standard when the request is initiated by the defendant should not be reviewed because it was not presented to the trial court. Our examination of the transcript fails to disclose any intimation on the part of defense counsel of his present claim that the statute contains two separate and distinct standards. In the absence of exceptional circumstances involving either a recently discovered constitutional right or a showing that the defendant has been deprived of a fundamental constitutional right and a fair trial, claims which are raised for the first time on appeal will not be considered by this court. *State* v. *Gethers*, 197 Conn. 369, 395, 497 A.2d 408 (1985); *State* v. *Evans*, 165 Conn. 61, 69, 327 A.2d 576 (1973).

A person who has been convicted of a crime and who is subject to incarceration has no constitutional right to be committed to any particular institution and his confinement in any of the state's facilities "is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum* v. *Fano,* 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 451, reh. denied, 429 U.S. 873, 97 S. Ct. 191, 50 L. Ed. 2d 155 (1976); see also *State* v. *Davis,* 190 Conn. 327, 337, 461 A.2d 947, cert. denied, 464 U.S. 938, 104 S. Ct. 350, 78 L. Ed. 2d 315 (1983). Although due process affords certain safeguards to a convicted defendant who may be subject to psychiatric treatment in a state hospital against his will, he does not have a constitutionally protected liberty interest in being committed to a state mental hospital merely because he believes that in-patient psychiatric treatment is appropriate to his needs. See *Vitek* v. *Jones,* 445 U.S. 480, 493–94, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980); *State* v. *Davis,* supra.

We find no basis in this record to consider the defendant's newly raised statutory claim which was "never called to the attention of the trial court and upon which it necessarily could have made no ruling in the true sense of the word . . . ." *State* v. *Taylor,* 153 Conn. 72, 86, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966).

The second claim raised by the defendant is that the trial court abused its discretion by failing to order an examination based upon Borden's opinion that the defendant had a propensity for violence and was potentially dangerous to himself or others. He argues that the court erred by rejecting the psychiatric testimony solely because it was not based on particular instances of assaultive conduct or violent behavior either before or after the commission of the crimes with which he was charged.

Predictions of future dangerousness are difficult for both psychiatrists and the courts to make because of the "inherent vagueness of the concept itself," and such determinations must be dealt with by trial courts to a considerable extent on a case-by-case basis. *State* v. *Cuvelier,* 175 Conn. 100, 109 n.5, 394 A.2d 185 (1978). The confinement of a convicted defendant for psychiatric treatment on the basis of such predictions is not solely a medical judgment that he is mentally ill and treatable, but also involves social and legal determinations made by judges or juries "reflecting values generally held in the community, concerning the kinds of potential harm that justify the State in confining a person for compulsory treatment." *Humphrey* v. *Cady,* 405 U.S. 504, 509, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972).

Whenever a judge imposes a sentence on a defendant convicted of a violent crime, he must necessarily make a prediction as to that person's future conduct. See *Jurek* v. *Texas,* 428 U.S. 262, 275, 96 S. Ct. 2950, 49 L. Ed. 2d 929, reh. denied, 429 U.S. 875, 97 S. Ct. 198, 50 L. Ed. 2d 158 (1976). If the issue is whether a defendant is mentally ill so as to constitute a danger, his past history and conduct are relevant factors for the court to consider in predicting his future behavior. *State* v. *Cuvelier,* supra, 109. The accuracy of such predictions is much greater where there is a pattern of repetitive assault and violent conduct. See *Barefoot* v. *Estelle,* 463 U.S. 880, 902, 103 S. Ct. 3383, 77 L. Ed. 2d 1090, reh. denied, 464 U.S. 874, 104 S. Ct. 209, 78 L. Ed. 2d 185 (1983).

The court may also properly consider whether the defendant's behavior will be less unpredictable and less dangerous in a more structured environment. See *State* v. *Cuvelier,* supra, 110. The concept of dangerousness to the safety of others must be viewed in the light of the realities of prison life which are radically different

from conditions in the community at large. See *Hewitt v. Helms,* 459 U.S. 460, 474, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983).

The trial court's decision to deny the defendant's request for a diagnostic examination was based upon its conclusions that, apart from the crimes with which he was charged, the defendant had failed to establish either that he had any prior history of assaultive or violent conduct or that he would be dangerous to himself or others in a prison setting. From the facts found by the court, "it is clear that those conclusions are amply supported and do not violate law, logic or reason." *State v. Cuvelier,* supra.

The defendant's final claim is that the report of the diagnostic examination would have provided a valuable sentencing aid to the court. See *State v. Davis,* supra, 341. In the course of oral argument, the state asked that we examine the presentence investigation report, and we have done so. See Practice Book § 917.

The report contains a detailed summary of the defendant's school records as well as the psychiatric evaluations made by Borden at the request of the defendant and by Dr. John Donnelly, at the request of the state. It also contains a review of the records of the Elmcrest Psychiatric Institute from July 1, 1980, until May 5, 1981. The report of Donnelly's examination which was made on October 4, 1982, Borden's report dated August 20, 1982, and the Elmcrest discharge summary are attached to the probation officer's report.

A statute which provides for a court-ordered psychiatric examination for a defendant before the imposition of sentence presupposes that the court does not have access to sufficient medical information to permit it to make an informed judgment as to the defendant's mental condition. *Hall v. United States,* 410 F.2d

653, 658 (4th Cir. 1969). Where the court has adequate psychiatric documentation of the defendant's mental condition, there is no need for it to utilize the statutory provisions concerning further examinations. Id. The presence of some degree of mental illness does not prevent or avoid the imposition of sentence by the court nor does it necessarily require that the court "blindly and automatically implement the statutory machinery" providing for psychiatric examinations. Id., 657.

Furthermore, the fact that an accused who has pleaded guilty may be in need of psychiatric treatment does not thereby entitle him to hospitalization rather than imprisonment. *Lynch* v. *Overholser,* 369 U.S. 705, 717–18, 82 S. Ct. 1063, 8 L. Ed. 2d 211 (1962). The purpose of statutes which permit transfers of mentally ill inmates from penal institutions to hospitals is to provide such treatment for those who are found to be in need of it after sentencing. Id., 718; see General Statutes §§ 17-194c through 17-194e and 17-194g.

Our review of the record in this case establishes that the court's refusal to grant the defendant's request for a diagnostic examination prior to sentencing was not an abuse of its discretion.

There is no error.

In this opinion the other judges concurred.