STATE OF CONNECTICUT *v.* DANIEL HAYES
(7573)

BORDEN, DALY and O'CONNELL, Js.

Argued October 19, 1989—decision released February 27, 1990

*Milo J. Altschuler,* special public defender, for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, were *Mary Galvin,* state's attorney, and *David Shepack,* assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70, sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and risk of injury to a child in violation of General Statutes § 53-21. The court imposed consecutive sentences of fifteen, eight and seven years, for a total effective sentence of thirty years imprisonment.

The defendant claims that the trial court erred (1) in granting the state's motion to quash a subpoena for

certain erased police records of the victim's uncle, (2) in omitting from its jury charge an element of the offense of risk of injury to a child, (3) in declining to give a specific cautionary instruction on the credibility of a child witness, (4) in improperly commenting on the evidence during its instructions to the jury, (5) in denying the defendant's request to submit the bill of particulars to the jury, (6) in violating the defendant's double jeopardy rights by imposing consecutive sentences on the three charges, and (7) in denying the defendant's motion for an additional presentencing psychiatric diagnostic examination under General Statutes § 17-244. We find no error.

In the first and second counts of the information, the state alleged that between January, 1983, and March, 1985, the defendant engaged in vaginal intercourse by force, and in vaginal intercourse with a person under the age of sixteen. In the third count, the state alleged that, between the same dates, the defendant willfully caused and permitted a child under the age of sixteen to be placed in a situation where her morals where likely to be impaired. In response to the defendant's motion, the state filed a bill of particulars, stating, inter alia, that as to the first two counts, the state intended to prove repeated acts of vaginal intercourse by the defendant with the victim, and as to the third count, repeated acts of vaginal intercourse and sexual contact.

The jury could reasonably have found the following facts. The victim is the defendant's daughter. Between January, 1983, and March, 1985, when the victim was between six and eight years old, five separate incidents occurred. In the first incident, the defendant pulled up the victim's nightgown and tickled her vagina with his fingers. When she asked the defendant to stop, he told her to be quiet because "I have to concentrate." In the next three incidents, the defendant tied the victim to a bed with clothesline and engaged in vaginal inter-

course with her. After the fourth incident, the victim, her mother and her brother moved from the family's apartment in Ansonia to Seymour, and the defendant remained in the Ansonia apartment. In the fifth incident, the defendant had vaginal intercourse with the victim in the apartment while she was visiting him there. The victim testified that no ropes were used because she had thrown them into the sewer after the previous incident so that it would not "happen again." This testimony was corroborated by the subsequent discovery of two pieces of rope in a storm sewer directly in front of the apartment. There was also expert testimony that the victim's vaginal opening was enlarged, consistent with repeated incidents of vaginal penetration by a penis, and that the size of the opening was inappropriate for a physically immature child of the victim's age.

I

The defendant first claims that the trial court erred in granting the state's motion to quash the defendant's subpoena duces tecum for certain police records regarding the victim's maternal uncle, who had been arrested for sexually assaulting his own children. The charges against the uncle were subsequently nolled, and the records pertaining to those charges were statutorily erased pursuant to General Statutes § 54-142a (c).[1] The defendant claims that these records were necessary to show that the victim's uncle, rather than he, committed the crimes with which he was charged, and that the denial of access to the records violated his right to produce witnesses on his behalf and his right to a fair trial. We disagree.

---

[1] General Statutes § 54-142a (c) provides in pertinent part: "Whenever any charge in a criminal case has been nolled in the superior court . . . if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased."

This claim arises out of the following procedural context. The defendant served a subpoena duces tecum on the Seymour police department for the police records regarding the arrest, on or about November 20, 1982, of the victim's uncle, G, for sexually assaulting his own children. The state moved to quash the subpoena on the grounds that, because the charges had been nolled, the records were statutorily erased and not subject to disclosure to the defendant, and that the records were irrelevant to the issues in the case. The defendant claimed that, during "some of the dates" on which he was alleged to have committed the crimes in question, the victim was living with her mother, who was the sister of G, that "at a point in time near to when the allegations arose" G was charged with sexually assaulting his own children, and that G "had substantial access [and] was even living in the same residence with the alleged victim in this case or around the corner and was with her a lot." Relying on *State* v. *Douglas,* 10 Conn. App. 103, 522 A.2d 302 (1987), and *State* v. *Echols,* 203 Conn. 385, 524 A.2d 1143 (1987), the defendant claimed that he was constitutionally entitled to examine the records in order to determine whether there was a possible similarity to the offenses alleged in this case, thereby giving rise to the possibility "that someone else may have committed [these] crime[s]." He argued that, if G was living in the same household, and if the records disclosed that his conduct with his own children was similar to the manner in which the acts of intercourse were described in this case, that would be sufficient to show that G, and not the defendant, committed the crimes. The trial court granted the state's motion to quash. The defendant did not specifically request the court to examine the records in camera or to mark them for identification.

It is undisputed that the charges against G had been nolled, and that the records were erased pursuant to

General Statutes § 54-142a (c). It is also undisputed that the defendant does not fall within any of the statutory exceptions to that statute. See General Statutes § 54-142a (f) and (g), and § 54-142c (b).

Such erasure does not, however, necessarily create a shield that is impermeable to a claim of constitutional deprivation. See *State* v. *Douglas,* supra. We conclude that, although a criminal defendant may in appropriate circumstances make a showing sufficient to trigger an in camera review of statutorily erased records, the defendant in this case did not make such a showing.

In *State* v. *Douglas,* supra, this court considered the tension between the criminal records erasure statute and the constitutional right of confrontation through cross-examination. We held that, on the facts of that case, it was error for the trial court to decline to review in camera the previous trial testimony of two state's witnesses in the separate trial of an alleged coparticipant in the crimes charged. The earlier trial had resulted in an acquittal of the alleged coparticipant. The purpose of the review we ordered was to determine whether that prior testimony should have been disclosed to the defendant. Id., 117–18.

Although in *Douglas* we did not require a preliminary showing of inconsistency in order to trigger the court's in camera review; id., 116; it was implicit in the facts of that case that the statutorily shielded transcript directly related to the crimes charged against the defendant, since that transcript contained the testimony of two of the state's witnesses regarding those same crimes. Furthermore, the court in *Douglas* drew heavily on *State* v. *Pierson,* 201 Conn. 211, 514 A.2d 724 (1986), and *State* v. *Esposito,* 192 Conn. 166, 471 A.2d 949 (1984). In those cases, the court, in resolving the tension between the right of confrontation and the psychiatric privilege, required a showing of a reason-

able basis in the evidence in order to trigger either an in camera review of psychiatric records or a voir dire of psychiatric personnel. *State* v. *Douglas,* supra, 110.

In *State* v. *James,* 211 Conn. 555, 579, 560 A.2d 426 (1989), our Supreme Court considered whether the trial court erred in refusing to review in camera the school records of the victim of the crimes charged. The court held that, although it was error for a trial court to refuse "to examine documents in camera where a sufficient foundation has been laid to indicate a reasonable likelihood that they contain material relevant to the case or useful for impeachment of a witness"; id.; the defendant had not made a showing "sufficient to establish a reasonable ground to believe that [the school records] may have contained anything related to the issues at trial or the credibility of [the victim]." Id.

Reading *Douglas* and *James* together, we conclude that, in order to trigger an in camera review of records shielded by General Statutes § 54-142a (c), the defendant must first establish some reasonable likelihood that the records contain information relevant to the case. Here, the defendant claimed that the records were relevant to a claim that someone other than he had committed the crimes charged. Evidence of such third party culpability is a component of a defendant's due process right to present a defense. *State* v. *Echols,* supra. For third party evidence to be admissible, however, it must directly connect the third party to the crime, it must be more than evidence of the third party's motive to commit the crime, and it must be more than enough to raise a bare suspicion of such third party culpability. Id., 392. Thus, in this case, in order for the defendant to trigger an in camera review of the records,[2] he was required to establish a reasonable

---

[2] Although the defendant did not request the trial court to review the records in camera, and instead sought direct access to them, during argu-

likelihood that the records contained material directly connecting G to the crimes charged. This he failed to do.

The crimes charged against the defendant were alleged to have occurred between January, 1983, and March, 1985. The records sought by the defendant concerned the arrest of G on or about November 20, 1982, for sexually assaulting his own children. Thus, G's alleged conduct with his children preceded by at least approximately one and one-half months the beginning of the time period of the charges brought against the defendant. The defendant represented that at some unspecified period of time "near to when these allegations [against the defendant] arose," G lived in the same house as the victim "or around the corner and was with her a lot." He did not lay any foundation for a reasonable indication that the victim was falsely accusing her father in order to protect her uncle, or that no assaults had taken place and she was mimicking her cousins' allegations against her uncle. Moreover, the familial relationship between the victim and the defendant precludes any suggestion of mistaken identity. Compare *State* v. *Echols,* supra. Finally, the defendant claimed only that the records might disclose a *possible* similarity to the crimes charged, sufficient only to raise a *possibility* that G committed those crimes. We conclude, therefore, that the defendant failed to establish a reasonable likelihood that the records would directly connect G, rather than him, to the crimes charged.

## II

The defendant next claims that the trial court erred in its charge to the jury on the crime of risk of injury

ment he specifically relied on our decision in *State* v. *Douglas,* 10 Conn. App. 103, 522 A.2d 302 (1987), where the relief ordered on remand was that the court conduct such a review. Thus, we do not regard it as fatal to his appellate claim that he did not make such a specific request, because the court was on notice of the availability of such review as a more limited response to the defendant's claim for direct access.

to a child. He claims that a proper instruction to the jury on General Statutes § 53-21[3] must include the element of a deliberate touching in a sexual and indecent manner. The defendant contends that, based on prior judicial interpretations of this statute, such an omission constitutes an improper extension of the scope of conduct violative of this offense. See *State* v. *Zwirn,* 210 Conn. 582, 587–88, 556 A.2d 588 (1989) (an element of the offense is that the act must be done in a sexual and indecent manner); *State* v. *Schriver,* 207 Conn. 456, 466, 542 A.2d 686 (1988) (the type of physical harm prohibited by § 53-21 is limited to deliberate, blatant abuse). The defendant also claims that the omission of this instruction impermissibly broadened the scope of the charges as alleged in the accusatory pleadings, thereby permitting a conviction for an uncharged offense. See *State* v. *Belton,* 190 Conn. 496, 501, 461 A.2d 973 (1983). These claims are without merit.

The defendant's argument that the court improperly expanded the scope of behavior proscribed by the statute ignores the distinction drawn by our Supreme Court in *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963), and reaffirmed in *State* v. *Schriver,* supra, 464, that § 53-21 proscribes " 'two general types of behavior . . . (1) deliberate indifference to, acquiesence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being.' " Here, the defendant was charged with the first part of § 53-21, which does not require a physical touching. *State* v. *Schriver,*

[3] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

supra, 467; *State* v. *Perruccio,* 192 Conn. 154, 159–60,
471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S.
Ct. 55, 83 L. Ed. 2d 6 (1984).

The cases upon which the defendant relies; *State* v.
*Zwirn,* supra; *State* v. *Schriver,* supra; and *State* v.
*Pickering,* 180 Conn. 54, 428 A.2d 322 (1980); all
involved the judicial construction of the second part of
§ 53-21 and are, therefore, inapposite. The trial court
properly limited its charge to the first part of the stat-
ute, and its instruction excluding the element of a delib-
erate touching was a proper statement of the law. Since
the court gave a proper instruction on the first part
of the statute, the defendant's claim that the instruc-
tion improperly expanded the scope of the charging
documents also must fail.

Furthermore, even if we assume that the court erred
by failing to include the requested instruction, because
the conduct that was specified by the state in the bill
of particulars and presented by the state at trial
involved sexual acts perpetrated on the victim, rather
than the creation of a harmful situation, the error was
harmless. Although a trial court's failure to include an
essential element of an offense in its jury instructions
is error, such an error is harmless if the record estab-
lishes beyond a reasonable doubt that it did not con-
tribute to the verdict. *State* v. *Price,* 205 Conn. 616,
619–21, 534 A.2d 1196 (1987).

The bill of particulars specified repeated acts of sex-
ual intercourse and sexual contact with the victim as
the particular conduct constituting the risk of injury
offense. The state's evidence involved four incidents
of intercourse, and one incident of sexual contact. The
jury convicted the defendant of both counts of sexual
assault, indicating that it found the alleged acts of inter-
course proven. The evidence regarding the one touch-
ing incident was not susceptible of an interpretation

of an innocent touching; see *State* v. *Zwirn,* supra, 588; nor did the defendant claim any such interpretation. Indeed, his testimony was that he did not commit any of the conduct described by his daughter. Under these circumstances, it is clear beyond a reasonable doubt that the jury's verdict was not affected by the absence of an instruction that the defendant's conduct must have been sexual and indecent.

The defendant also asserts a related claim that the jury could have been misled into believing that acts other than a deliberate touching in a sexual and indecent manner were sufficient to find the defendant guilty, in light of certain evidence that the defendant had shown the victim Playboy magazines. We disagree.

The court, in its instructions, fully explained the offense of risk of injury as it applied to the victim's testimony. That instruction made absolutely no reference to the showing of any magazines. Because the victim could not testify as to the exact dates of the various assaults, the state sought to elicit from her certain testimony surrounding each of the events in order to show that she was testifying to multiple assaults, rather than one assault. The showing of the magazines was simply part of that evidence.

In addition, the evidence regarding the magazines was wholly superfluous to a conviction of risk of injury to a child. The jury found the defendant guilty of sexual assault in the first degree and sexual assault in the second degree. In order to have found the defendant guilty of these charges, the jury necessarily found that, under the first count, he had forcible intercourse with the victim and, under the second count, he had sexual intercourse with the underage victim. These findings alone were sufficient to sustain the conviction for risk of injury to a child. See *State* v. *Pickering,* supra, 65–66. Where the jury found such acts of sexual intercourse

proven, it is fanciful to suggest that the defendant could have been convicted of risk of injury merely because he showed adult reading materials to the victim.

## III

The defendant next claims that the trial court erred in failing to instruct the jury on the credibility of a child witness. He claims that it was harmful error for the court not to give a specific cautionary charge on the credibility of a child witness under *State* v. *Anderson,* 152 Conn. 196, 205 A.2d 488 (1964). It is no longer mandated under Connecticut law that a court give a special child witness credibility instruction whenever it is requested by a defendant. *State* v. *James,* supra, 566–71, overruling *State* v. *Anderson,* supra. Such a "cautionary comment upon the evidence"; *State* v. *James,* supra, 571; is now clearly within the discretion of the trial court.

The defendant contends that the trial court abused its discretion by declining to give such an instruction. He claims that the instruction should have been given because the victim gave different versions of the incidents to others who provided constancy of accusation testimony at trial, because the trial court referred to the victim's testimony in its instructions, and because the victim was allowed to testify without a finding of competency, pursuant to General Statutes § 54-86h.[4] None of these reasons persuades us that the trial court abused its discretion.

The first two arguments advanced by the defendant do not distinguish between the possible infirmities of a child's testimony and that of an adult, and, therefore,

[4] General Statutes § 54-86h provides: "No witness shall be automatically adjudged incompetent to testify because of age and any child who is a victim of assault, sexual assault or abuse shall be competent to testify without prior qualification. The weight to be given the evidence and the credibility of the witness shall be for the determination of the trier of fact."

provide no support for the proposition that a court should give a special child credibility instruction under these circumstances. Even if the victim's testimony at trial differed in some respects from her previous statements to certain health care workers, such inconsistent statements were appropriate fodder for impeachment, and simply because they were made by a child witness did not necessitate the giving of a special credibility instruction. Likewise, the giving of a special cautionary instruction was not compelled simply because the trial court referred in its charge to the testimony of the child victim.

We also reject the defendant's argument that the court was required to give such an instruction in this case because of the absence of a preliminary competency hearing, pursuant to General Statutes § 54-86h. The victim in this case was almost twelve years old at the time of trial, approximately the same age as the victim in *State* v. *James,* supra, where our Supreme Court found no abuse of discretion by the trial court in failing to give such an instruction. Also, as in *James,* the court, in its charge, referred several times to the victim's age and instructed the jury fully on the credibility of witnesses in general. See id., 567. Furthermore, the victim's testimony was corroborated by expert testimony that she had an enlarged vaginal opening consistent with repeated penetration by a penis, and by the physical evidence of the ropes that were retrieved from the sewer where the victim claimed to have discarded them. In addition, the state presented constancy of accusation testimony from two adults experienced in counselling sexually abused children.

## IV

The defendant next claims that the trial court improperly commented on the evidence during its charge to the jury. He claims that the court summarized the evi-

dence in a biased manner that unfairly favored the state by not referring to facts favorable to him, and by presenting the evidence in a manner not suggested by the charging documents. We disagree.

Only part of the defendant's claim was properly preserved in the trial court, namely, that the court referred to the evidence in a manner not suggested by the charging documents.[5] Because "we will limit our review only to those [comments on the evidence] specifically raised by the exceptions taken to the charge"; *State* v. *Nims,* 8 Conn. App. 631, 640, 513 A.2d 1280, cert. denied, 201 Conn. 812, 516 A.2d 887 (1986); we decline to review the defendant's claim that the court unfairly commented on the evidence. The defendant makes no claim of *Evans* review. See *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The portion of the defendant's claim that was properly preserved is without merit.

The trial court's instructions referred to specific portions of the victim's testimony as it related to the three counts in the information. The defendant claims that the trial court erred by framing the facts in its instructions differently from the state's theory of the case based on its accusatory pleadings. In the bill of particulars, the state alleged, for the first two counts,

---

[5] At trial, the defendant excepted to the court's failure to "state the facts as stated in the state's response to bill of particulars dated July 7, 1988. I believe that . . . the facts to be proved should be those alleged in response to the bill of particulars." In a virtually identical exception, the defendant claimed that the court improperly "chose three of the five incidents to which [the victim] has testified, one for each of . . . [the three offenses with which he was charged] and gave the jury the impression that each separate act was applied to a separate charge, that the three tie up situations were sexual assault one and that the incident after [the victim] had moved out of the house was sexual assault two and the touching was the risk of injury, and I don't think that is the allegation in this case, and I think it is improper to have stated it that way."

repeated acts of vaginal intercourse, and, for the third count, repeated acts of vaginal intercourse and sexual contact.

The trial court in its instructions provided one particular incident for each count of the information. Regarding the first count, the court summarized the victim's testimony concerning an incident where the defendant engaged in intercourse with her after tying her to a bed. Regarding the second count, the court summarized the victim's testimony that the defendant engaged in intercourse with her without tying her. Regarding the third count, the court summarized the victim's testimony that the defendant pulled up her nightgown and tickled her vagina with his fingers.

The court incorporated the victim's testimony in its instructions in order to explain the elements of the crimes with which the defendant was charged. See *State* v. *James,* supra, 588; *State* v. *Storlazzi,* 191 Conn. 453, 464–67, 464 A.2d 829 (1983). "It is the duty of the trial court to refer to testimony in so far as it may be necessary to assist the jury to a clear understanding of the relationship of the testimony to the material facts. *State* v. *Nims,* [supra]. 'The charge must go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven.' *State* v. *Sumner,* 178 Conn. 163, 170–71, 422 A.2d 299 (1979)." *State* v. *Gallman,* 16 Conn. App. 433, 435, 547 A.2d 932 (1988); see *State* v. *Cazimovski,* 20 Conn. App. 190, 192, 565 A.2d 254 (1989).

There was no variance between the state's evidence and its allegations in the bill of particulars. Regarding the first count, the criminal conduct stated in the bill of particulars, namely, forcible vaginal intercourse, coincided with the victim's testimony as referred to in the court's instructions. Likewise, under the second

count, the conduct alleged in the bill of particulars, namely, vaginal intercourse with a child under the age of sixteen, was referred to in both the bill of particulars and the jury instructions. With respect to the third count, the court's instructions were, if anything, unduly favorable to the defendant because they omitted the allegation and evidence of repeated acts of intercourse, and referred only to sexual contact.

## V

The defendant next claims that the trial court erred in denying his request to submit the bill of particulars to the jury. He argues that the failure to submit the bill of particulars denied him due process of law and a fair trial because the jury could not be expected to reach a proper verdict if it were not aware of the full extent of the charges. The defendant's sole support for this claim is Practice Book § 833, which provides: "When any bill of particulars is ordered, an amended or substitute information shall be filed incorporating its provisions." We disagree.

The defendant's argument is fatally flawed because it is based on the proposition that where the state files a bill of particulars, the information ipso facto becomes "two documents instead of one." This is incorrect. " 'The bill of particulars does not become part of the [information]. See 4 Wharton, Criminal Law and Procedure § 1870. See generally 41 Am. Jur. 2d, Indictments and Informations, §§ 163–165.' *State* v. *Glass,* 107 R.I. 86, 92, 265 A.2d 324 (1970)." *State* v. *Roque,* 190 Conn. 143, 154–55, 460 A.2d 26 (1983). The purpose of a bill of particulars is not to inform the jury of the nature of the charges against the defendant; it is to supply the accused and the court with additional information concerning an accusation to ensure that the defendant has received fair notice of the charges against him. Id., 154; *State* v. *Cole,* 8 Conn. App. 545, 554, 513 A.2d 752 (1986).

Where a defendant objects to the state's failure to comply with § 833, and the trial court does not require compliance, the trial court has committed reversible error if the lack of an amended or substitute information could have reasonably affected the verdict. *State v. Cole,* supra. Section 833, however, is not self-executing. If the defendant fails to object to the state's noncompliance, he cannot belatedly claim that the bill of particulars should have been submitted to the jury in lieu of an amended information.

Practice Book § 858 requires the trial court to submit to the jury "(1) [t]he . . . information upon which the defendant was tried; and (2) [a]ll exhibits received in evidence." There is no requirement under § 858 that a separate bill of particulars, which has not been incorporated into an amended information, also be submitted to the jury. Indeed, to do so could lead to jury confusion since the jury would have to consolidate and reconcile the two documents during its deliberations. See *United States* v. *Radetsky,* 535 F.2d 556, 565 (10th Cir. 1976) (submission to jury of separate bill of particulars is undesirable).

## VI

The defendant next claims that the imposition of consecutive sentences for sexual assault in the first degree in violation of General Statutes § 53a-70 (a),[6] sexual assault in the second degree in violation of General Statutes § 53a-71 (a),[7] and risk of injury to a child

---

[6] General Statutes § 53a-70 (a) provides in pertinent part: "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person . . . ."

[7] General Statutes § 53a-71 (a) provides in pertinent part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

in violation of General Statutes § 53-21[8] deprived him of his double jeopardy rights. He claims that because the bill of particulars refers to the "exact same allegations," both risk of injury and sexual assault in the second degree are, in this case, lesser included offenses of sexual assault in the first degree. This claim is without merit.

"[U]nder the *Blockburger*[9] test, sexual assault in the second degree is not a lesser included offense of sexual assault in the first degree" (footnote added); *State* v. *Blackwell,* 20 Conn. App. 193, 197, 565 A.2d 549 (1989); and "[t]here is no indication that these two clearly separate offenses were intended by the legislature to constitute one crime for double jeopardy purposes." Id., 198. Likewise, risk of injury to a child and sexual assault in the first degree are separate offenses under *Blockburger,* because each requires proof of an element that the other does not. Cf. *State* v. *McCall,* 187 Conn. 73, 91–92, 444 A.2d 896 (1982) (risk of injury and sexual assault in the second degree are not the same offense for double jeopardy purposes).

The defendant also claims that the court improperly imposed sentence by attempting to compensate for the state's having undercharged him. The court in its discretion imposed consecutive sentences that were within the applicable statutory limits. Once it is determined that a defendant was protected "against multiple punishments for the same offense"; *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); the fact that the trial court imposed consecutive rather than concurrent sentences for different offenses did not violate his double jeopardy rights.

---

[8] See footnote 3, supra.

[9] *Blockburger* v. *United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

## VII

The defendant's final claim is that the trial court erred in denying a continuance for sentencing to permit further presentencing diagnostic evaluation pursuant to General Statutes § 17-244.[10] We disagree.

The court granted the defendant's motion for a § 17-244 exam after his conviction, and he was examined by Merrill Rotter, a psychiatrist. Rotter testified that the defendant should be referred to Whiting Forensic Institute (Whiting) for further evaluation to determine if he was dangerous to himself. The defendant requested that Rotter's suggestion be followed and that he be referred to Whiting for further evaluation. The court denied the request, finding that the defendant was not dangerous to himself or others, and therefore did not fall within any of the categories of persons specified in General Statutes § 17-239[11] for treatment

---

[10] General Statutes § 17-244 provides in pertinent part: "(a) Except as provided in section 17-255 any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers, or of a sex offense involving (1) physical force or violence, (2) disparity of age between an adult and a minor or (3) a sexual act of a compulsive or repetitive nature, may if it appears to the court that such person is mentally ill and dangerous to himself or others . . . order the commissioner to conduct an examination of the convicted defendant by qualified personnel of the institute. Upon completion of such examination the examiner shall report in writing to the court. Such report shall indicate whether the convicted defendant should be committed to the diagnostic unit of the institute for additional examination or should be sentenced in accordance with the conviction. . . . If the report recommends additional examination at the diagnostic unit, the court may, after a hearing, order the convicted defendant committed to the diagnostic unit of the institute for a period not to exceed sixty days, except as provided in section 17-245 provided the hearing may be waived by the defendant."

[11] General Statutes § 17-239 provides: "The Whiting Forensic Institute shall exist for the care and treatment of (1) mentally ill patients, confined in facilities under the control of the department of mental health, who require care and treatment under maximum security conditions, (2) persons convicted of any offense enumerated in section 17-244 who, after exami-

at Whiting. On the date of sentencing, the defendant again requested further evaluation, and the court denied the request.

The defendant argues that the court abused its discretion because the basis of its decision was that the defendant did not fall within any of the categories of persons eligible for care and treatment at Whiting under General Statutes § 17-239. He argues that this reasoning was improper because his request was for further evaluation and not for final commitment. We conclude, however, that the court did not abuse its discretion by declining to commit the defendant to Whiting for further evaluation.

Where the court has sufficient medical information from which it can make an informed judgment of the defendant's mental condition, the court may properly deny his request for a § 17-244 diagnostic examination. *State* v. *Gates,* 198 Conn. 397, 404–405, 503 A.2d 163 (1986). Indeed, an initial examination pursuant to § 17-244 is required only "if it appears that [the defendant] is mentally ill and dangerous to himself or others." See footnote 10, supra. That determination may take into account whether the defendant would be dangerous to others in a prison setting. *State* v. *Gates,* supra 404. Even the presence of some degree of mental illness does not require that the court " 'blindly and automatically implement the statutory machinery' providing for psychiatric examinations"; id., 405, quoting *Hall* v. *United States,* 410 F.2d 653, 657 (4th Cir. 1969); prior to imposing sentence. A fortiori, whether the court should order a second examination under § 17-244 is left to the court's discretion.

nation by the staff of the diagnostic unit of the institute as herein provided, are determined to be mentally ill and dangerous to themselves or others and to require custody, care and treatment at the institute and (3) inmates in the custody of the commissioner of correction who are transferred in accordance with sections 17-194b to 17-194g, inclusive, and who require custody, care and treatment at the institute."

The trial court is responsible for determining the proper confinement for a convicted person " 'within the normal limits or range of custody which the conviction has authorized the State to impose.' " *State* v. *Gates,* supra, 402, quoting *Meachum* v. *Fano,* 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 451, reh. denied, 429 U.S. 873, 97 S. Ct. 191, 50 L. Ed. 2d 155 (1976). The court in its discretion may, under appropriate circumstances, make this decision without the aid of any report at all; see *State* v. *Gates,* supra; after a final recommendation has been made; see General Statutes § 17-245; or, as in the present case, after a recommendation for further evaluation. While the timing of the decision may vary, the substance of what must be decided remains the same, namely, whether the defendant is in need of custody, care and treatment at Whiting. General Statutes § 17-245 (c); *State* v. *Gates,* supra, 401. In determining whether a defendant is in need of such custody, care and treatment, the court must necessarily consider the types of persons for which Whiting exists.

In this case, the court found that the defendant was not dangerous to himself or others. The defendant does not claim that this finding is clearly erroneous. Further, the court had sufficient information, including the defendant's testimony at trial, and Rotter's testimony and report, to determine whether the defendant should be committed to Whiting rather than to a correctional facility.

There is no error.

In this opinion the other judges concurred.