******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBBIE SANTOS *v.* COMMISSIONER
OF CORRECTION
(AC 35154)

DiPentima, C. J., and Mullins and Bear, Js.

*Argued May 12—officially released July 29, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Lee Friend Lizotte*, with whom was *Charles D. Ray*, for the appellant (petitioner).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, chief state's attorney, and *Brenda L. Hans*, assistant state's attorney, for the appellee (respondent).

*Opinion*

BEAR, J. The petitioner, Robbie Santos, appeals from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court erred in concluding that his trial counsel was not ineffective for (1) failing to contest the state's dog tracking evidence, and (2) advising the petitioner to waive a jury trial. We affirm the judgment of the habeas court.

The record reveals the following relevant facts and procedural history. On May 21, 2003, at 5:30 p.m., Derek Hopson, a clinical psychologist, finished his day of work at Middlesex Hospital Center for Behavioral Health in Middletown. Hopson exited the building with a coworker, Christine Brown, and the two proceeded to the parking lot. Brown got into her car and drove alongside Hopson as he walked to where his car was located. Hopson and Brown left the office together because Hopson had been assaulted by three men in the parking lot a few months prior.

As they were approaching Hopson's car, they observed the petitioner, who they both described as a black man wearing a dark hooded sweatshirt, walking toward them quickly. When he was approximately twenty feet away, the petitioner asked Hopson for change, which Hopson answered he did not have. When about ten feet away, the petitioner asked again for change and began rushing toward Hopson's car. Hopson again told the petitioner that he did not have change, unlocked his car door, and leaped into his car, slamming the door closed as the petitioner reached the driver's side door. Hopson saw the petitioner smirk, step back, and fire one gunshot through the front driver's side window. The bullet shattered the window, but missed Hopson. Hopson pressed down on his car horn hoping to attract attention, and the petitioner turned and ran out through the parking lot entranceway. Brown initially pursued the petitioner in her car, but soon decided that such a course of action was unsafe, stopped, and dialed 911 to report the incident.

Officer Vincent Mazzotta, a K-9 handler, was the second officer to arrive at the scene at 5:38 p.m. with his German shepherd, Dago. Upon arrival, Mazzotta assessed the situation and prepared Dago to track the suspect by following the suspect's scent. Dago began tracking the scent across Hubbard Street and down Goodyear Avenue. Officer James Prokop joined Mazzotta during the track to provide backup. Although the tracking path was not linear, Dago eventually tracked the scent to a low-rise apartment building that was part of Wesleyan University. There, the officers saw the petitioner, who was wearing a gray sweatshirt and black windpants. The officers ordered the petitioner to the ground, and, in accordance with his training, Dago iden-

tified the petitioner as the source of the scent by putting his paws on the petitioner's back. The petitioner was apprehended approximately three tenths of a mile from where the shooting occurred.

The petitioner was arrested and charged with attempt to commit murder, conspiracy to commit murder, attempt to commit assault in the first degree, and gun related offenses. The petitioner elected a bench trial and, on July 20, 2005, the trial court found the petitioner guilty of attempted murder. He was acquitted of all the other charged offenses. The petitioner was sentenced to a total effective sentence of eighteen years incarceration. The judgment of conviction was affirmed on appeal. *State* v. *Santos*, 104 Conn. App. 599, 601, 935 A.2d 212 (2007), cert. denied, 286 Conn. 901, 943 A.2d 1103, cert denied, 555 U.S. 851, 129 S. Ct. 109, 172 L. Ed. 2d 87 (2008).

On January 8, 2009, the petitioner filed a petition for a writ of habeas corpus as a self-represented litigant. He subsequently obtained an attorney, who filed an amended petition on July 15, 2011. The petitioner filed a second amended petition on January 4, 2012. In count one of the second amended petition, the petitioner alleged claims of ineffective assistance of counsel for trial counsel's failure to challenge the dog tracking evidence by withdrawing a motion to suppress the evidence, not raising an objection to the evidence at trial, and not presenting expert testimony to challenge the reliability of the dog track, and for trial counsel's failure to adequately advise the petitioner about waiving his right to a jury trial.[1]

The habeas trial for this matter began on February 8, 2012, and continued on February 9, 10, and 27, 2012. In a memorandum of decision filed on September 21, 2012, the habeas court denied the petition. With respect to the dog tracking related claims, the habeas court concluded: "Because [trial counsel's] decisions not to retain an expert, not to pursue additional investigation, to withdraw the motion to suppress and not to object to the dog track evidence on foundational grounds all stemmed from the tactical decision not to contest the dog track evidence, which the court has determined to have been an objectively reasonable decision under the circumstances, the court finds that those claims also fail under the first prong of *Strickland* [v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]." The court further concluded that because the petitioner had failed to establish that his counsel was deficient, it was unnecessary to determine whether the petitioner was prejudiced. With respect to the jury waiver claim, the habeas court concluded that "[trial counsel's] decision to recommend a jury waiver was a tactical one and his advice regarding that recommendation was objectively reasonable which resulted from his professional judgment that a trial before Judge

[Robert L.] Holzberg provided the best chance to achieve a favorable result given the circumstances of this case." The court additionally concluded that "the petitioner has not shown the required prejudice resulting from any presumed deficient performance."

The petitioner subsequently filed a petition for certification to appeal the denial of his second amended petition on October 1, 2012, which the habeas court granted on October 9, 2012. This appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin our analysis with the well established standard of review. "A petitioner's right to the effective assistance of counsel is guaranteed by the sixth and fourteenth amendments to the United States constitution, and by article first, § 8, of the Connecticut constitution. . . . In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given their testimony. . . .

"In *Strickland* v. *Washington*, [supra, 466 U.S. 668], the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable. . . .

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an *objective standard of reasonableness*. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged counsel, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presump-

tion that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . .

"[T]he Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim. . . . The [petitioner] is also not guaranteed assistance of an attorney who will make no mistakes. . . . What constitutes effective assistance [of counsel] is not and cannot be fixed with yardstick precision, but varies according to the unique circumstances of each representation." (Emphasis added; internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, 149 Conn. App. 681, 690–92, 89 A.3d 426 (2014).

I

The petitioner first claims that the habeas court erred in concluding that trial counsel's decision to forgo any challenge to the dog tracking evidence was not ineffective assistance of counsel. He advances three arguments in support of this claim. First, he argues that trial counsel's decision was not reasonable because trial counsel's lay understanding of the evidence was wrong and counsel made the decision without consulting an expert. Second, he argues that the decision was not reasonable because the admission of the evidence did not aid, but actually hurt his defense. Finally, the petitioner argues that it was not reasonable because the evidence would have been excluded had counsel pursued the issue. Additionally, the petitioner argues that trial counsel's decision prejudiced him. We are not persuaded.

The following additional facts are relevant to this claim. The petitioner's defense was that he was not the shooter and that the actual shooter had gotten away. Although trial counsel's original strategy was to challenge the admissibility of the dog tracking evidence, he withdrew his motion to suppress and objection to the state's motion in limine after hearing the testimony of the tracking officer and a tape recording of the track in real time at the hearing. Trial counsel believed that the tape recording was helpful to the petitioner's defense because it showed that Dago tracked away from where the petitioner was apprehended and contradicted the testimony of Mazzotta, Dago's handler. Trial counsel believed that the tape helped to establish that Dago was actually tracking the suspect who got away, and not the petitioner, and that Dago only reversed direction after prompting from the officer once a radio transmission that a suspect had been located was received.

Trial counsel understood that the dog tracking evidence would play an important role in the case, and investigated accordingly. Although he did not retain an expert on dog tracking evidence, trial counsel did speak with Officer Kevin Rodino, the expert witness for the state on training and certifying K-9 dogs, and did collect literature on K-9 officers and K-9 processes from Officer Mark Masse, who previously had been a K-9 police officer in Meriden. Masse also assisted trial counsel by walking the dog tracking route with another investigator, Ellen Knight, to assist the investigation she was conducting for trial counsel.

At trial, counsel used the tracking tape recording during his cross-examination of Prokop and Mazzotta. In addition, in his closing argument, trial counsel highlighted the discrepancies between the tape and Mazzotta's testimony, and also Prokop and Mazzota's testimony. Trial counsel argued that the tape cast doubt on their testimony, and supported the petitioner's defense that the actual suspect had gotten away.

"[T]here is no per se rule that requires a trial attorney to seek out an expert witness." (Internal quotation marks omitted.) *Antonio A.* v. *Commissioner of Correction*, 148 Conn. App. 825, 833, 87 A.3d 600, cert. denied, 312 Conn. 901, A.3d (2014). "Where trial counsel has consulted with such experts, however, but made the tactical decision not to produce them at trial, such decisions properly may be considered strategic choices. Furthermore, trial counsel is entitled to make strategic choices in preparation for trial." (Internal quotation marks omitted.) Id., 834. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland* v. *Washington*, supra, 466 U.S. 690–91.

The petitioner argues that trial counsel's decision was not reasonable because he did not consult an expert. Although trial counsel may not have retained a dog tracking expert, he did speak with Rodino, the expert witness for the state on training and certifying K-9 dogs, and did collect literature on K-9 officers and K-9 processes from Masse, who previously had been a K-9 police officer in Meriden. Additionally, trial counsel had both Masse and Knight walk the dog tracking route. The habeas court's findings that trial counsel conducted a thorough investigation and made a reasonable strate-

gic choice to use the dog tracking evidence to support the petitioner's defense that the actual shooter got away were not clearly erroneous.

The petitioner next argues the decision was not reasonable because the dog tracking evidence did not aid, and in fact, hurt the petitioner's defense. The habeas court, however, found that "[t]he tape recording of the communications of the officers in real time during the actual track in this case could reasonably be understood to support the petitioner's defense that Dago traveled some distance west on Church Street for a period of time away from where the petitioner was located. Dago and the officers turned around and headed back east on Church Street after they were told over the transmission that the police had apprehended the petitioner 60 yards north of the intersection of Church and Hotchkiss Streets. This evidence as well as the dispatch tape that evinced someone other than the petitioner getting into a car on Church Street, and Dago's failure to locate the sweatshirt, supported the petitioner's theory that another person committed the shooting." The petitioner has failed to demonstrate that trial counsel's decision was anything other than sound trial strategy, and, therefore, the habeas court's finding that trial counsel did not render ineffective assistance was not clearly erroneous.

Finally, the petitioner argues that trial counsel's decision was not reasonable because the dog tracking evidence would have been excluded had counsel pursued the issue. We conclude, as the habeas court did, that this claim fails under the first prong of the *Strickland* test, because trial counsel's decision to withdraw his challenge to the dog tracking evidence stemmed from his objectively reasonable tactical decision to use the dog tracking evidence to raise reasonable doubt and to support the petitioner's defense.

Having concluded that the performance of the petitioner's trial counsel did not fall below an objective standard of reasonableness, we need not analyze the prejudice prong of *Strickland. Strickland* v. *Washington*, supra, 466 U.S. 697 (court need not address both components of *Strickland* test "if the [petitioner] makes an insufficient showing on one").

II

The petitioner next claims that he was denied effective assistance of counsel by trial counsel's failure to advise him of the potential prejudice of having Judge Holzberg decide both the reliability of the eyewitness identification at the pretrial stage and the case on the merits. We disagree.

The following additional facts are relevant to this claim. When the petitioner first entered his plea of not guilty, he elected a jury trial. Prior to trial, the court heard several motions, including the petitioner's motion to suppress the eyewitness identifications. After three

days of testimony on the motion to suppress the eyewitness identifications, on June 15, 2004, the petitioner waived his right to a jury trial. Following the recommendation of trial counsel, the petitioner opted for a court trial before Judge Holzberg.

Trial counsel discussed his jury waiver recommendation with the petitioner on a number of occasions over the course of several weeks. Trial counsel explained why he believed that the petitioner would have a better chance of prevailing at a court trial. Trial counsel believed that the petitioner, who was from Waterbury, would have to testify at trial to explain why he was in Middletown on the day of the shooting. Trial counsel feared that if the petitioner testified, his extensive criminal history would be introduced to undermine his credibility, which might be a liability if presented to a jury.[2] Trial counsel had a prior court trial with Judge Holzberg that he felt resulted in a fair outcome. He, therefore, believed that Judge Holzberg was a fair and experienced jurist, who would be better able to compartmentalize the evidence and to give it the appropriate weight and consideration. The petitioner was present at the hearing before Judge Holzberg on his motion to suppress the eyewitness identifications, and knew, prior to waiving his right to a jury trial, that it was Judge Holzberg who would preside at the court trial. Judge Holzberg canvassed the petitioner on his decision to waive his right to a jury trial, and he specifically told the petitioner that he would be the trial judge.

Although trial counsel discussed the pros and cons of waiving his right to a jury trial with the petitioner, he did not specifically tell the petitioner that there was a chance that Judge Holzberg could improperly prejudge the eyewitness testimony during the pretrial hearing. Trial counsel did not advise the petitioner on this risk because he believed that Judge Holzberg would follow the law and decide the case on the basis of the evidence produced at trial, not on the evidence produced at the pretrial hearing.

"[A] judge's participation in the preliminary stages of a case, and the knowledge he or she thereby gains, will not ordinarily preclude his or her continued participation in the same case thereafter. See, e.g., *State* v. *Hayes*, 127 Conn. 543, 581–82, 18 A.2d 895 (1941) (judge's ordering of grand jury, presiding over grand jury proceedings and ruling on numerous preliminary motions did not disqualify him from presiding over trial), superseded by statute on other grounds as stated in *State* v. *Burns*, 194 Conn. 469, 472–73, 481 A.2d 1077 (1984); see also *State* v. *Ortiz*, 83 Conn. App. 142, 152–53, 848 A.2d 1246 (judge's knowledge of defendant's repeated inculpatory admissions during pretrial proceedings did not require recusal), cert. denied, 270 Conn. 915, 853 A.2d 530 (2004); R. Flamm, Judicial Disqualification: Recusal and Disqualification of Judges

(2d Ed. 2007) § 13.1, pp. 343–44 (fact that a judge may know something to the discredit of a criminal defendant does not, in and of itself, establish that she is biased against him).

"Although a judge, by participating in pretrial or other proceedings, may be exposed to inadmissible evidence about a party, the standard assumption is that he or she is able to disregard it . . . even if he or she subsequently is to act as fact finder." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Rizzo*, 303 Conn. 71, 119–21, 31 A.3d 1094 (2011), cert. denied, U.S. , 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012); see also *State* v. *Santangelo*, 205 Conn. 578, 602, 534 A.2d 1175 (1987) ("[t]o impose . . . a requirement that a criminal trial court recuse itself every time it receives unsolicited material uncomplimentary to a defendant prior to trial or sentencing would create an intolerable situation which could lead to a manipulation of the criminal justice system").

Additionally, our rules of practice require that pretrial motions be decided by the judge assigned to preside at trial, and specify that decisions on motions in limine may be reserved and decided by the judge later in the proceeding. See Practice Book § 41-7 ("[a]ll [pretrial] motions which require an evidentiary hearing shall be heard by the judicial authority to whom the case has been assigned for trial, unless otherwise provided by rule or statute, or otherwise ordered by the presiding judge"); see also Practice Book § 42-15 ("[t]he judicial authority may grant the relief sought in the motion [in limine] or such other relief as it may deem appropriate, may deny the motion with or without prejudice to its later renewal, or may reserve decision thereon until a later time in the proceeding").

In this case, trial counsel made a tactical recommendation on the basis of his professional experience with Judge Holzberg and the concerns raised by the evidence that would be presented at trial. The petitioner was present at the pretrial hearing before Judge Holzberg on his motion to suppress the eyewitness identifications and was told both by trial counsel and Judge Holzberg that if he waived his right to a jury, Judge Holzberg would preside at trial. The habeas court found that trial counsel's advice was objectively reasonable. Additionally, there was no evidence that Judge Holzberg did not properly separate his pretrial and trial roles, and disregard evidence presented at the pretrial hearing that was inadmissible at trial.[3] The petitioner, therefore, has failed to show that trial counsel's performance was deficient.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner's second amended petition also included a count of actual innocence. That claim, however, was withdrawn at trial.

[2] "At trial, the defense called the [petitioner] to testify on his own behalf.

The [petitioner] testified that in May, 2003, he had a fifteen to sixteen year drug habit and that he used marijuana, cocaine, crack cocaine and pills. The [petitioner] explained that he often sold drugs and engaged in 'hustling on the street' in order to support his illegal drug habit. The [petitioner] had a lengthy criminal history, with eleven prior felony convictions, including burglary, attempted larceny and assault on a police officer. . . .

"According to the [petitioner], on May 21, 2003, he was out on the streets of Waterbury 'getting high [on drugs], selling drugs [and] hanging out.'" *State* v. *Santos*, supra, 104 Conn. App. 609.

[3] At oral argument before this court, the petitioner admitted that had trial counsel wanted to support his objection to the motion in limine by conducting a voir dire of the witness police officer, that voir dire normally would have taken place during the trial and the evidentiary ruling would have been made by Judge Holzberg from the bench.

————————————————